United States Court of Appeals
Fifth Circuit

**F I L E D**

April 26, 2004

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

—————

No. 03-10427

—————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL SHANE PHIPPS;
DEAN RAYBURN GILLEY,

Defendants-Appellants.

—————

Appeal from the United States District Court
for the Northern District of Texas

—————

Before JOLLY, DUHÉ, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

In this criminal appeal, Michael Shane Phipps and Dean Rayburn Gilley challenge their

sentences imposed on remand, arguing that the district court impermissibly upwardly departed at

resentencing by ordering that their kidnaping and carjacking sentences run consecutively. For the

following reasons, we hold that the district court was free to reconsider an upward departure through

consecutive sentencing on remand and that, on the facts presented, such upward departure was both

warranted by the existence of aggravating factors and reasonable in degree. We therefore affirm the

1

district court's judgment sentencing Phipps and Gilley each to a term of imprisonment of 789 months, five years of supervised release, restitution in the amount of $ 7, 785.69, and a $ 400 special assessment.

FACTUAL AND PROCEDURAL BACKGROUND

On May 16, 2001, a grand jury charged Phipps and Gilley in a multiple-count superseding indictment.[1] Count 1 of the indictment charged the defendants with conspiracy to commit kidnaping, in violation of 18 U.S.C. §§ 1201 (a) (1) and (c). Count 2 charged Phipps and Gilley with kidnaping and aiding and abetting, in violation of 18 U.S.C. §§ 1201 (a)(1) and 2. Count 3 charged Phipps and Gilley with the use of a firearm during and in relation to the kidnaping and aiding and abetting, in violation of 18 U.S.C. §§ 924 (c) (1) (A) (ii) and 2. Count 4 charged the two defendants with carjacking and aiding and abetting, in violation of 18 U.S.C. §§ 2119 and 2. Finally, Count 5 charged them with the use of a firearm during and in relation to the carjacking and aiding and abetting, in violation of 18 U.S.C. §§ 924 (c) (1) (A) (ii) and (2). On September 25, 2001, after a two day trial, the jury found Phipps and Gilley guilty on all five counts.

The Presentencing Reports ("PSRs" or "reports") grouped together three of the five counts of conviction against each defendant for the purposes of calculating their respective base offense levels pursuant to Chapter 3, Part D (Multiple Counts) of the November 1, 2001, United States Sentencing Guidelines Manual ("Sentencing Guidelines," or "Guidelines"). Counts 3 and 5, the defendants' firearms counts, by statute required mandatory terms of imprisonment of 7 years for the first offense (Count 3) and 25 years for the subsequent offense (Count 5), each to run consecutively

---

[1]The superseding indictment also charged the defendants' accomplice, Julian Medina, for his role in the offenses. Medina does not appeal his sentence here.

with any other sentence imposed, and were therefore excluded from the Guidelines' multiple grouping rules. See USSG §§ 2K2.4; 3D1.1; 18 U.S.C. § 924 (c) (1) (C) (i ). Because the defendants' conspiracy, kidnaping, and carjacking offenses (Counts 1, 2, and 4) were closely related and involved substantially the same harm, the PSR recommended that these counts of conviction be grouped together and assigned a single offense level, see USSG §§ 3D1.1, 3D1.2 (2001), corresponding to the most serious count in the group. See USSG § 3D1.3 (a); United States v. Davis, 226 F.3d 346, 359 (5th Cir. 2000). These multiple grouping rules led to the use of the criminal sexual abuse guidelines, USSG § 2A1.3, as the defendants forced the victim to perform sexual acts during the course of her kidnaping. See USSG § 2A4.1 (b) (7) (A). Section 2A1.3 produced a base offense level of 27. The PSR additionally recommended a two-level enhancement for obstruction of justice, USSG § 3C1.1, a 4-level enhancement for forcing the victim to engage in a sexual act by threatening or placing her in fear of death, serious bodily injury, or kidnaping, USSG § 2A3.1 (b) (1), and a 4-level enhancement for the defendants' abduction of the victim, USSG § 2A3.1 (b) (5). Based on each defendant's total offense level score of 37 and Criminal History Category of V, the PSR recommended a guideline range of 324 to 405 months' imprisonment for counts 1, 2, and 4. The PSR concluded that "[a]t this time, there are no known mitigating or aggravating factors that would warrant a departure from the prescribed guideline range."

At sentencing on January 11, 2002, the district court adopted the findings and conclusions of the PSR, stating its intent "to impose the maximum sentence that [could] be imposed" to "ensure" that the defendants would be "imprisoned for the remainder of their lives . . . because they are such a menace to society they should never be free again . . . ." The district court therefore sentenced each defendant at the top of the guidelines range to 789 months' (65 years, 9 months') imprisonment,

to be followed by a five-year term of supervised release. Specifically, the district court sentenced them to 405 months' imprisonment on each of the conspiracy, kidnaping, and carjacking counts, with these sentences to run concurrently. The district court further imposed a mandatory 7-year (84 month) term of imprisonment on Count 3 (use of a firearm during and in relation to a crime of violence) and a mandatory 25-year (300 month) prison term on Count 5 (subsequent conviction for the use of a firearm during and in relation to a crime of violence), to run consecutively to each other and to the 405-month sentence. The court also sentenced the defendants to restitution in the amount of $ 7,785.69 and a $ 400 special assessment.

Phipps and Gilley appealed their convictions and sentences. On January 15, 2003, in United States v. Phipps, 319 F.3d 177 (5th Cir. 2003) ("Phipps I"), this Court affirmed their convictions on all counts except one § 924 (c) count, reasoning that the rule of lenity compelled the conclusion that § 924 (c) "does not . . . authorize multiple convictions for a single use of a single firearm based on multiple predicate offenses."[2] Phipps I, 319 F.3d at 183. We then vacated their sentences, directed that the district court dismiss one of the § 924 (c) counts, and remanded for resentencing on all remaining counts "as a result of the § 924 (c) error." Id. at 189. In reaching our decision, we noted that the district court had expressed its desire at the initial sentencing to impose the maximum sentences permitted by law and had assumed the validity of both § 924 (c) convictions when it decided to run the carjacking sentence concurrently with the conspiracy and kidnaping sentences. Id.

---

[2]We also found that the district court's imposition of a 405-month term of imprisonment as to the carjacking count was plain error because the statutory maximum for that count was 300 months, but that the defendants were not prejudiced because the carjacking sentence ran concurrently with the valid, longer sentences for conspiracy and kidnaping. Nonetheless, we vacated all sentences and remanded for resentencing on all counts of conviction.

4

Accordingly, we stated:

> With only one valid § 924 (c) (1) conviction, the [district] court may wish to reconsider whether the carjacking sentence should run concurrently or consecutively with the conspiracy and kidnaping sentences. We therefore remand with instruction that the district court may reconsider this question under our limited remand rule.

Id. at 192 (citing United States v. Marmolejo, 139 F.3d 528, 530 (5th Cir.1998)).

On remand, the district court issued an order directing the preparation of revised PSRs to reflect this court's opinion in Phipps I. Prior to resentencing, the Government filed a motion to upwardly depart, arguing that an upward departure was warranted under USSG § 5K2.3, p.s., for the infliction of extreme psychological injury, citing the victim's suffering and noting that she continues to suffer "substantial impairment" of an "extended or continuous duration" as a result of the defendants' offense conduct. The Government also asserted that the defendants' extreme conduct warranted an upward departure pursuant to USSG § 5K2.8, p.s., applicable where the offense conduct was "unusually heinous, cruel, brutal, or degrading to the victim." The Second Addendum to each defendant's PSR similarly recommended an upward departure pursuant to the generalized authority of § 5K2.0, p.s., and the specific provisions for extreme psychological injuries, § 5K2.3, p.s., and criminal purpose, § 5K2.9, p.s., on the basis that, given the criminal purpose and totality of the crime, the "actual seriousness" of the carjacking offense was not fully taken into account in the kidnaping guideline. The probation officer cited as aggravating factors warranting departure the defendants' use of a knife to commit the carjacking, their intent to kill the victim, and the long-term emotional trauma suffered by the victim as a result of their offenses.

At resentencing, the district court dismissed one of the § 924 (c) firearms counts, Count 5, in accordance with this Court's opinion in Phipps I. The district court then adopted the findings and

5

conclusions of the Second Addendum to the PSR, agreeing that an upward departure was warranted pursuant to §§ 5K2.0, 5K2.3, and 5K2.8 for the reasons stated in the Government's motion and concluding "that the upward departure should be in the form of imposition of a consecutive sentence as to the kidnaping and the carjacking counts." The district court thus sentenced each defendant to 405 months' imprisonment on Counts 1 and 2, ordering that these sentences run consecutively to each other. As to Count 4, the district court sentenced each defendant to 300 months, to run consecutively to all other sentences imposed by the court (including those imposed by counts 1 and 2). Finally, the court imposed a mandatory sentence of 84 months as to Count 3, to run consecutively to all other sentences imposed, producing an aggregate total sentence of 789 months. Phipps and Gilley now appeal their sentences.

DISCUSSION

Phipps and Gilley contend that the district court erred on remand by imposing an upward departure through consecutive sentencing based on its finding that the otherwise applicable 489-month term of imprisonment did not adequately reflect the extreme nature of the defendants' conduct or the resultant profound psychological injury sustained by the victim. As a threshold matter, Phipps and Gilley assert that the district court was precluded from revisiting whether there existed a factual and legal basis supporting such an upward departure by the law of the case doctrine, this Court's mandate in Phipps I, the waiver rule, and 18 U.S.C. § 3742 of the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("Protect Act"), Pub.L. No. 108-21, 117 Stat. 650 (2003). The defendants assert in the alternative that there was no basis for an upward departure because the factors relied upon by the district court in deciding to impose consecutive sentences were already adequately taken into account by the applicable guideline range. The

6

defendants further contend that the extent of the upward departure, which increased each of their sentences by 25 years, was unreasonable. Our thorough review of the record and this Circuit's precedent, however, convinces us that the district court committed no reversible error at resentencing.

I.     Sentencing issues open for reconsideration on remand

We first address the defendants' assertion that the law of the case doctrine and its corollary, the mandate rule, foreclosed the district court's imposition of a discretionary upward departure in the form of consecutive sentencing. "Whether the law of the case doctrine foreclosed the district court's exercise of discretion on remand and the interpretation of the scope of this court's remand order present questions of law that this court reviews de novo." United States v. Lee, 358 F.3d 315, 320 (5th Cir. 2004) ("Lee II") (citing Sobley v. Southern Natural Gas Co., 302 F.3d 325, 332 (5th Cir. 2002) (internal quotation omitted)).

Under the law of the case doctrine, ordinarily "'an issue of fact or law decided on appeal may not be reexamined either by the district court on remand or by the appellate court on subsequent appeal.'" Lee II, 358 F.3d at 320 (citing United States v. Matthews, 312 F.3d 652, 657 (5th Cir. 2002) (Matthews II), cert. denied sub nom, Matthews v. United States, 123 S.Ct. 1604 (2003) (citation omitted)). As we have clarified recently, this "proscription covers issues we have decided expressly and by necessary implication, reflecting the 'sound policy that when an issue is once litigated and decided, that should be the end of the matter.'" Id. (citing United States v. United States Smelting Ref. & Mining Co., 339 U.S. 186, 198 (1950) (internal citation omitted)).[3] These

_____

[3]Rather than "a limit on judicial power," however, the law of the case doctrine "is an exercise of judicial discretion which merely expresses the practice of the courts generally to refuse to reopen what has been decided." Lee II, 358 F.3d at 320 (citing Messinger v. Anderson, 225 U.S.

7

tenets equally apply to the mandate rule, which, as a derivative of law of the case, "compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." Lee II, 358 F.3d at 321 (citing United States v. Bell, 988 F.2d 247, 251 (1st Cir.1993)). The mandate rule thus posits that "'[a]bsent exceptional circumstances, . . . a lower court on remand must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court.'" Id. (quoting Matthews II, 312 F.3d at 657).

Applying these principles in the instant case, we conclude that neither the law of the case doctrine nor the mandate rule prevented the district court from revisiting the upward departure issue on remand. Phipps and Gilley correctly point out that at the initial sentencing, the district court adopted the findings and conclusions of the PSRs, including the PSRs' determination that, at the time of the reports, there existed no aggravating or mitigating factors that would warrant a departure from the prescribed guidelines range. Contrary to the defendants' assertions, however, these findings and conclusions did not become law of the case because they were not before this Court in Phipps I and hence were not "decided" expressly or implicitly by us on appeal. See, e.g., Lee II, 358 F.3d at 320. United States v. Mendez, 102 F.3d 126, 131 (5th Cir. 1996), relied upon by the defendants for the proposition that a decision by the district court cannot be revisited during later stages of the same case, does not compel a contrary conclusion. In Mendez, we held that the law of the case doctrine foreclosed the district court's reexamination of an issue that "was squarely decided by us" in the prior appeal. Id. Nowhere in Mendez did we address whether a district court may depart from its

_____

436, 444 (1912); Matthews II, 312 F.3d at 657).

unappealed findings and conclusions in a subsequent proceeding.

Nor did the mandate rule foreclose the district court's reconsideration on remand of consecutive sentencing resulting in an upward departure. Phipps and Gilley concede that this Court's mandate in Phipps I "did state that the district court could reconsider the question of whether to run the sentence for the carjacking conviction concurrent with the sentences for conspiracy and kidnaping." See 319 F.3d at 192. Nonetheless, the defendants argue that the imposition of an upward departure through consecutive sentencing was not available to the district court on remand, contending that this Court did not authorize the district court to revisit the findings and conclusions it made at the initial sentencing based on the PSRs. In support of this contention, the defendants attempt to distinguish this Court's decision in Lee II, 358 F.3d at 324, in which we held that the mandate at issue in that case did not foreclose the district court's upward departure on remand.

While we agree that Lee II is distinguishable from the instant case, we find that the reasons why that is so compel our conclusion that our Phipps I mandate did not preclude the district court from upwardly departing through consecutive sentencing. In Phipps I, we expressly invited the district court to reconsider the imposition of consecutive sentencing, fully aware that the district court's dismissal, in accordance with our opinion, of one of the § 924 (c) counts would lower each defendant's sentence by 25 years. See 319 F.3d at 192. As we have repeatedly stated, under our limited mandate rule, generally "only those discrete, particular issues identified by the appeals court for remand are properly before the resentencing court." Lee II, 358 F.3d at 321 (quoting United States v. Marmolejo, 139 F.3d 528, 530 (5th Cir. 1998) ("Marmolejo II")). Because we specifically identified the issue of consecutive sentencing for remand, it is beyond cavil that that issue was open for the district court's reconsideration. This case thus does not raise the more complex issues

9

presented in <u>Lee II</u>, in which the mandate before us was silent about an upward departure in any form, requiring our consideration of whether that sentencing issue "arose out of the correction of the sentence ordered by this Court." We do not even engage in that analysis in this case. Our <u>Phipps I</u> mandate authorized the district court to reconsider consecutive sentencing, and it did just that.

The defendants' waiver argument is similarly infirm. Phipps and Gilley contend that because the Government did not challenge the district court's finding that there was no basis for an upward departure either at the original sentencing or in the prior appeal, the Government could not then urge an upward departure on remand. This contention, however, is foreclosed by our decision in <u>Lee II</u>, in which we clarified that our waiver doctrine does not preclude raising an unappealed issue for the first time on remand when that issue could not have been raised previously and became extant as a consequence of our appellate mandate. <u>Lee II</u>, 358 F.3d at 324. As in <u>Lee II</u>, in this case the Government had no grounds to appeal the district court's initial decision not to upwardly depart. <u>See id.</u> (quoting 18 U.S.C. § 3742 (b)(1)-(4)). Therefore, contrary to the defendants' assertions, we cannot say that the Government had "ample incentive" to raise but chose to forego this issue at a prior stage of the proceedings. <u>See id.</u> (distinguishing <u>United States v. Hass</u>, 199 F.3d 749, 753 (5th Cir. 1999), <u>cert denied sub nom</u>. <u>Hass v. United States</u>, 531 U.S. 812 (2000)).

Finally, Phipps and Gilley argue that §§ 3553 (c) and 3742 (g) (2) of the Protect Act prohibited the district court from upwardly departing on remand through consecutive resentencing. Effective April 30, 2003, § 3553 (c) requires that the district court include in its written judgment the specific reasons warranting a departure "[i]f the court departs from the applicable guideline range." In turn, § 3742(g) provides that, upon resentencing after appeal, the district court may only depart from the guidelines based on a ground that was both approved by the appellate court and "specifically

10

and affirmatively included in the written statement of reasons" issued in connection with the original sentencing.[4] According to the defendants, because the district court did not make a finding at the initial sentencing hearing that there was a basis for departure, it could not upwardly depart at resentencing on remand. We disagree.

While this Court has yet to address whether these provisions of the Protect Act bar the district court from imposing a "new" departure on remand, we hold that they do not where, as here, the district court did not depart at the original sentencing. In this case, the need for an upward departure to satisfy the objectives of the Sentencing Guidelines arose out of our appellate mandate, which, by directing the dismissal of one of the § 924 (c) counts, removed the basis upon which the district court had relied in determining the appropriate sentencing package. A departure on grounds made newly-germane as a result of our correction of the sentence can arise only upon resentencing after appeal, and thus could not have been included in the original statement of reasons. Such departures do not fit within the purpose of § 3742 (g), to "prevent sentencing courts, upon remand, from imposing the same illegal departure on a different theory." H.R. Conf. Rep. 108-66, at 59 (2003), reprinted in 2003 U.S.C.C.A.N. 683, 694. In this case, the district court did not upwardly depart at the initial sentencing, and we authorized the reconsideration of consecutive sentencing on remand. Our view is consistent with that of every other circuit that has considered the extent to which § 3742 (g) limits the authority of the district court to upwardly depart on remand. See United States v. Martin, 2004

---

[4]We note that the defendants' initial sentencing took place prior to April 30, 2003, the effective date of the Protect Act. We need not decide, however, whether §§ 3553 (c) and 3742 (g) (2) apply retroactively, because even assuming that they do, we conclude that the provisions do not bar the district court from upwardly departing for the first time on remand where such departure was approved by the appellate court.

11

WL 626732, *8 (1st Cir. 2004) (holding "that § 3742 (g) does not prohibit departures necessary to satisfy the double jeopardy crediting requirement" because such a departure "can arise, by its very nature, o nly upon resentencing after appeal, and thus could not have been listed in the original statement of reasons"); United States v. Lauersen, 348 F.3d 329, 344 n. 16 (2d Cir. 2003) (allowing a new departure on remand, despite the restrictive language of § 3742(g), because "the basis for . . . [the] departure did not exist at [the] initial sentencing" but rather arose out of the remand order); United States v. Cole, 357 F.3d 780, 786 (8th Ci r. 2004) (holding that § 3742 (g) (2) did not "require the district court to impose a sentence limited only to the grounds identified in a prior section 3553(c) written statement" because the court was not required to make a written statement in that case, where the original sentencing occurred prior to the effective date of the Protect Act).

In sum, we therefore agree with the Government that on remand, the district court was free to reconsider consecutive sentencing entailing an upward departure because the issue was not waived in the initial appeal, was expressly left open by this court's mandate in Phipps I for reconsideration at resentencing, and became germane only as a result of the correction of the sentence ordered by this court in the initial appeal.

II.     The propriety of upwardly departing based on aggravating factors

Phipps and Gilley next assert that the district court's upward departure from the criminal sexual abuse guidelines range was not warranted and, alternatively, that the extent of the upward departure was unreasonable. We affirm.

A.     Standard of review

Section 3742 (e) of the Protect Act governs the scope of our review of sentencing appeals. As we have previously stated, § 3742 (e) has decreased the level of deference we previously accorded

12

district courts' sentencing determinations to require <u>de novo</u> review, "but only when courts of appeals are considering determinations under subsections (3)(A) or (3)(B) of . . . § 3742(e)."  <u>Lee II</u>, 358 F.3d at 326 (quoting  <u>United States v. Bell</u>, 351 F.3d 672, 675 (5th Cir. 2003)).  Subsection (3) (A), pertaining to a district court's failure to include written reasons for the departure, does not apply in this case.  <u>See id.</u>  Nor does subsection (3) (B) apply where, as here, the district court's departure was  "based on a factor that *does* advance the objectives set forth in section 3553(a)(2), namely, those pertaining to "the need for the sentence imposed . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; and (C) to protect the public from further crimes of the defendant." <u>See id.</u> (quoting <u>Bell</u>, 351 F.3d at 676) (emphasis added); 18 U.S.C. § 3742 (e) (3) (B) (i).[5]  Because this case involves a departure determination made neither under (3) (A) nor (3) (B), we  review the district court's decision to upwardly depart for abuse of discretion, and, as in pre-Protect Act cases, we will affirm "if (1) the court gives acceptable reasons for departing, and (2) the extent of the departure is reasonable."  <u>United States v. Tampico</u>, 297 F.3d 396, 401 (5th Cir. 2002) (citation omitted); <u>see</u> <u>Lee II</u>, 358 F.3d at 326.

B.      The upward departure

At  resentencing, the district court imposed a 25-year upward departure from the defendants' § 2A1.3 criminal sexual abuse guideline range of 324 to 405 months (for the grouped conspiracy,

---

[5]At sentencing, the district court emphasized its intent "to impose the maximum sentence that [could] be imposed" to "ensure" that the defendants would "imprisoned for the remainder of their lives . . . ." Stating that the defendants "are such a menace to society they should never be free again," the district court decided to "sentenc[e the defendants] at the top of the guideline range because a sentence at that level will most effectively serve the Court's sentencing objectives of punishment and incapacitation of the defendant for the protection of the public."

kidnaping, and carjacking counts) through consecutive sentencing on three grounds: the presence in this case of aggravating factors not adequately taken into account by the guidelines, § 5K.0, p.s., the extreme psychological injury sustained by the victim, § 5K2.3, p.s., and the defendants' extreme conduct, § 5K2.8, p.s. Because Phipps and Gilley each also faced a mandatory minimum consecutive sentence of 84 months for the use and carry of a firearm, the departure increased their sentences from 489 to 789 months.

The defendants argue that the district court erred by upwardly departing because each of the factors relied upon by the district court was already taken into account by the applicable criminal sexual abuse guideline range, the guideline enhancements, and the mandatory minimum consecutive sentence of 84 months for the use and carry of a firearm. Phipps and Gilley further argue that the extent of the upward departure, which added 25 years to each defendant's sentence, was unreasonable. We disagree.

An upward departure is justified when the case is atypical, and does not fall into the "heartland" of cases embodied by the sentencing guidelines. United States v. Winters, 174 F.3d 478, 482 (5th Cir.1999). A district court thus may depart upwardly from the defendant's range if it "finds that there exists an aggravating . . . circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines and that should result in a sentence different from that described." 18 U.S.C. § 3553 (b). Where an encouraged factor has been taken into account by the applicable guidelines and enhancements or is inherent in the offense, the sentencing court may depart "only if the factor is present to a degree substantially in excess of that which is ordinarily involved in the offense." Koon v. United States, 518 U.S. 81, 88 (1996) (quoting USSG § 5K2.0).

14

After thoroughly reviewing the record in this case, we cannot say that the district court abused it s discretion by upwardly departing. The district court found that the victim sustained profound psychological harm as a result of her ordeal. Pursuant to § 5K2.3, p.s., a district court may impose an upward departure for extreme psychological injury that is "much more serious than that normally resulting from the commission of the offense." USSG § 5K2.3. Ordinarily, this adjustment is warranted "only when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of the victim," which "is likely to be of an extended or continuous duration," and which "manifests itself by physical or psychological symptoms or changes in behavior patterns." The district court found that to be the case here.

The PSRs, which were available both to the defense and the district court, included a victim impact statement, a letter from the victim, and a transcript of an officer's interview with the victim conducted one day prior to resentencing. Taken together with the victim's trial testimony, these statements fully set forth the devastating impact the victim suffered, and continues to suffer, as a result of the carjacking, kidnaping, repeated sexual assaults, use of a gun and a knife, and threats of death by Phipps and Gilley. In her impact statement, the victim, a 61-year-old grandmother, describes how she cannot cope, cannot trust anyone, and lives in continuous fear of being sexually assaulted. She states that her ordeal left her unable to have a loving relationship and has destroyed her marriage. In the span of some two years since the abduction and sexual assaults, she has moved from Texas to three different states. Thoughts of the kidnaping and rape continue to haunt the victim every single day. In her letter to the court, the victim similarly details the emotional trauma she suffered at the hands of the defendants, including her incessant fear of being robbed or raped, her fear of going out alone at night, and her inability to sleep without first ensuring that all windows and doors are locked.

15

The victim stated, in short, "I have lost everything. I feel like I'm the one in jail, not free to live my life, a life they took from me on December 13th.'"

Phipps and Gilley concede that the victim has suffered psychological injury, but argue that a departure based on this factor was not appropriate because her psychological injury was not "much more serious than that normally resulting" from the litany of offenses underlying their sentences—conspiracy, kidnaping, carjacking, sexual assault, and the use and carry of a firearm during the commission of a crime of violence. The defendants assert that the victim's emotional suffering, while serious, was to be expected given the serious nature of the listed offenses and therefore is not a factor that takes this case out of the "heartland" of cases involving the same offense conduct. Phipps and Gilley further protest that an upward departure was not warranted because the applicable criminal sexual abuse guidelines and enhancements already took into account all of their offense conduct.

While we acknowledge that measuring the relative severity of psychological injury suffered by victims of the aforementioned offenses presents a difficult question, we are persuaded in this case that the unrebutted statements by the victim establish that she has suffered extraordinary psychological injury within the meaning of § 5K2.3. See United States v. Anderson, 5 F.3d 795, 805 (5th Cir. 1993) (holding in part that a victim's unrebutted letter may suffice as evidence of extreme psychological injury warranting a departure). We emphasize that in determining whether an upward departure on this ground is appropriate, "we measure the psychological harm to [the victim] against that suffered by victims of 'ordinary' sexual abuse crimes; our standard is not what psychological injury would be considered the normal result of extreme sexual abuse and related conduct such as that exhibited by [the particular] defendants." Id. at 805 n. 17. Adhering to this principle, we find that

16

the district court's additional ground for departure--the extreme nature of the defendants' conduct--further supports our conclusion that the victim sustained extraordinary psychological damage. See id. at 805.

Pursuant to § 5K2.8, p.s., a district court may depart upward from the guidelines range "[i]f the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim. . . . ." The Policy Statement provides as examples of "extreme conduct" the "torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation.'" The district court found, and we agree, that the conduct by Phipps and Gilley was "unusually heinous" and "degrading to the victim," and involved circumstances not considered by the guidelines. First, we note that despite the seriousness of any criminal sexual abuse offense, the guidelines specifically contemplate that "an upward departure may be warranted" where "the victim was sexually abused by more than one participant." USSG § 2A3.1, comment. (n.5). Both Phipps and Gilley sexually abused the victim in this case. Over the course of the 24-hour abduction, from Texas to New Mexico, the victim was repeatedly subjected to sexual abuse and the threat of sexual abuse. Gilley raped the victim and forced her to perform oral sex in the presence of Phipps. Phipps, in turn, attempted to force her to perform oral sex and repeatedly threatened to sexually abuse the victim. Upon arrival in Albuquerque, the defendants held the victim captive in a motel room, where they forced her to disrobe and shower in front of them to ensure that all traces of forensic evidence from Gilley's sexual assault were destroyed. Throughout the ordeal, Gilley continuously threatened the victim with a knife to keep her under control, and both defendants led her to believe that they still had the gun that they had used at the outset of the kidnaping but had in fact later handed off to an accomplice. These events culminated in a dark street in Albuquerque, where the defendants, with the victim in tow, parked the

17

car next to a dumpster, stepped out, and argued over whether murdering the victim would increase the severity of the sentences they would face if apprehended for the "kidnaping, rape, [and] robbery" they already had committed.[6] It was only happenstance that the victim managed to escape.

Under the circumstances presented, we find that these additional factors exceed those inherent in the typical criminal sexual abuse case and amply justify the district court's upward departure based on the defendants' extreme conduct under § 5K2.8. We also find, as indicated above, that the heinousness of the defendants' offense conduct substantiates the unrebutted testimony of the victim as to her extreme psychological injury. See Anderson, 5 F.3d at 805. Because the defendants' sexual abuse conduct was extreme, we cannot say that the district court abused its discretion in determining that the severity of the resultant psychological injury likewise exceeded that "suffered by victims of 'ordinary' sexual abuse crimes." Id.; USSG § 5K2.3.

Finally, in light of the foregoing, we conclude that the extent of the district court's upward departure, which increased the defendants' sentences by 25 years, was not unreasonable. See, e.g., United States v. Lewis, 115 F.3d 1531,1538 (11th Cir. 1997) (upholding departure to life imprisonment where defendant beat, abducted, raped, and sodomized the victim); United States v. Johnson, 56 F.3d 947, 958 (8th Cir. 1995) (upholding a departure from 65 years based on four firearms counts to a 1,253-month prison term where the defendant carjacked, abducted, beat, raped, and sodomized the victim).

---

[6]Gilley got out of the car, threw a Sears bag in the dumpster and said to Phipps, "You got to do what you got to do, man. If we are gonna go to prison for a federal offense--- kidnaping, rape, robbery --- one more for murder won't matter." Phipps put his hand in his pocket. Believing he was about to shoot her, the victim ran away screaming "They've got a gun. They're going to kill me." She ran toward a man, who let her in his house.

CONCLUSION

Because we find that the district court did not exceed the scope of our <u>Phipps I</u> mandate by reconsidering the imposition of an upward departure, and that such departure was both warranted by the existence of aggravating factors and reasonable in degree, we AFFIRM Phipps' and Gilley's sentences.

AFFIRMED.