United States Court of Appeals
Fifth Circuit

**F I L E D**

November 11, 2004

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

———————————

m 03-51367

———————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

GEORGE LAWRENCE ANDREWS, also known as Larry Andrews,

Defendant-Appellant.

———————————————

Appeal from the United States District Court
for the Western District of Texas

———————————————

Before SMITH and GARZA, Circuit Judges,
and VANCE,[*] District Judge.

JERRY E. SMITH, Circuit Judge:

George Andrews challenges an upward departure regarding his sentence. Concluding that the district court's decision was fatally infected with antagonism toward the United States Sentencing Guidelines, we reverse and remand for resentencing by a different district judge.

### I.

Andrews and his mother were indicted for offenses stemming from a scheme to defraud

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

their elderly neighbor, Doris Carson, of over $150,000 and other things of value. Andrews pleaded guilty, to conspiring to commit mail, bank, and access device fraud and to the substantive offenses of bank fraud and access device fraud. In support of the plea, the government submitted a factual basis, providing that between October 1999 and June 2001, Andrews and his mother conspired to defraud Carson by, *inter alia*, negotiating in excess of 100 forged personal checks made payable to Andrews, creating a bogus notary letter for the purpose of cashing certificates of deposit belonging to Carson, using Carson's credit cards to obtain things of value, and using her personal information to open and use additional credit accounts.

The Presentence Report ("PSR") assessed a total offense level of 14, which reflected (1) a base offense level of 6; (2) a seven-level increase pursuant to U.S.S.G. § 2F1.1(b)-(1)(H) because the loss exceeded $120,000; (3) a two-level increase for more than minimal planning; (4) a two-level increase pursuant to § 3A1.1(b)(1) because Carson's age rendered her vulnerable; and (5) a three-level reduction for acceptance of responsibility.[1] Andrews's total offense level of 14, coupled with a criminal history category of I, yielded a guidelines range of 15 to 21 months' imprisonment.

At Andrews's first sentencing hearing, the district court notified him that sentencing would be continued for thirty days and that the court was considering upwardly departing "up to and including the statutory maximum." The court expressed dissatisfaction with Andrews's

[1] All references to the United States Sentencing Guidelines are to the 2000 version, which were the guidelines in effect when Andrews's criminal conduct took place.

guideline range, noting that drug couriers transporting contraband across the border for $200-$300 "to feed their starving children" typically face longer imprisonment. Andrews's case was compared with, and placed in the same category with, the court's most recent upward departure involving defendants who defrauded individuals out of charitable contributions immediately following the terrorist attacks of September 11, 2001.

At the sentencing hearing, the government recommended an upward departure to 37-46 months. After hearing from both sides, the court orally announced its decision to depart upwardly to 120 months. The court stated that "the sentencing guidelines are completely out of whack," and sentencing Andrews to 15 months would "violate the Court's t'aint right doctrine," noting, "[t]hat's probably not a real technical legal finding." The court found that the loss to the victim was traumatic and that the offense contained an element of identity theft that the court claimed was not taken into account by the Sentencing Commission. The court commented that Andrews's failure to make substantial restitution belied his claim of a recent spiritual awakening.

As a further ground for departure, the court noted a "bullying aspect" of the offense based on Andrews's physical size as compared to Carson's, although it conceded that there was no evidence that the size differential was used affirmatively. The court found that Andrews's distinct acts of criminal behavior would otherwise justify consecutive sentences, and accordingly the court imposed alternative 21-month consecutive sentences on each of the six counts. Andrews entered timely objection on the ground that the court had failed to give adequate notice of potential grounds for departure.

The court followed its oral pronouncement of sentence with a written opinion. *United States v. Andrews,* 301 F. Supp. 2d 607 (W.D. Tex. 2004). The court first noted that the facts of Andrews's case are egregious and that a guideline sentence of 15 months "would make a laughing stock of the concept of justice." *Id.* The court also commented on the federal bench's need for "some modicum of discretion" in making sentencing departures and went on to explain, under four subheadings, its reasons for upward departure. *Id.* at 609-11.

First, under "Lack of Acceptance of Responsibility," the court determined that despite his guilty plea, Andrews lacked sincerity, had failed to provide restitution, and sought to shift blame to his deceased mother. *Id.* at 609-10. Next, under a heading entitled "Punishment Consequences Not Present," the court stated that Andrews would not be subjected to additional punishment/loss consequences typically visited on white collar fraud defendants, because he did not face the "loss of mega income, removal of professional licenses and political power, forfeiture of mansions and limousines and being booted from the country club." *Id.* at 610.

Thirdly, under "Comparison to Other Departures by This Court," the court cited two fraud cases in which it had upwardly departed and two in which it had imposed downward departures. *Id.* Without discussing the facts of these cases, the court concluded that Andrews's situation was more closely aligned with the upward departure cases. *Id.* Finally, under "Comparison of Sentences in Financial Crimes with Guideline Punishment in Low-Level Drug Offenses," the court again commented on the typical guidelines sentence imposed for drug couriers, concluding that "An-

drews's crime is far worse and deserves more punishment than the guidelines suggest." *Id.* at 610-11. As a result of its findings, the district court imposed an upward departure to 120 months, which is the subject of the instant appeal. *Id.* at 612.

II.

Andrews asserts that the failure of the court to specify grounds for its intended upward departure from the applicable guidelines range rendered notice of such departure inadequate and warrants resentencing. *De novo* review applies to claims of lack of reasonable notice as to the grounds for upward departure. *United States v. Pankhrust*, 118 F.3d 345, 356-57 (5th Cir. 1997) (citing *United States v. Knight*, 76 F.3d 86, 87 (5th Cir. 1996)).

Under Rule 32(h) of the Federal Rules of Criminal Procedure,

Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

Codifying the rule of *Burns v. United States*, 501 U.S. 129 (1991), the purpose of this provision is to avoid placing defense counsel in the position of "trying to anticipate and negate every conceivable ground on which the district court might choose to depart on its own initiative."[2]

---

[2] *United States v. Milton*, 147 F.3d 414, 421 (5th Cir. 1998) (quoting *Burns*, 501 U.S. at 137).

As a preliminary matter, the court gave adequate and reasonable notice that it was considering an upward departure *at all* in the initial sentencing hearing. Despite the fact that neither the PSR nor the government had requested an upward departure, the court continued the case for thirty days, telling Andrews that it planned to depart upwardly to the maximum possible sentence for the offenses charged.[3]

In addition, for many of the factors used in deciding on an upward departure, the court gave adequate and precise notice of the specific grounds. At the initial hearing the court explicitly stated most of the concerns it had that were ultimately used, *legitimately or not*, to calculate the departure.[4] Although these were mentioned merely as concerns alongside the order continuing the case, they were sufficient to allow Andrews reasonably to prepare a meaningful response and engage in adversary

testing as required by *Burns*.[5]

Andrews's arguments to the contrary, so long as he was specifically notified that these matters troubled the court in the context of valid notification of upward departure, he cannot now complain of surprise that such factors were considered at the subsequent sentencing hearing. The touchstone of rule 32 is *reasonable* notice, so the fact that the court did not specifically delineate that it would use those factors should not make the notice defective; we should have confidence in the abilities of the average defense counsel to realize that mentioning factors in the context of upward departure notice puts the factors "in play" so as to allow counsel adequately to prepare for sentencing.[6]

On the other hand, the court failed to give adequate notice of other factors ultimately used in calculating an upward departure, by failing to reference them at all at the initial hearing when the notice of upward departure was given. The court did not mention the factor of the physical disparities between Andrews and Carson until Andrews was actually sentenced, and did not reference the absence of other punishment consequences that were normally applicable to other fraud defendants until its written opinion supporting the departure.

The government's argument, that sufficient notice was given as a result of the court's gen-

---

[3] *See, e.g., United States v. Clements*, 73 F.3d 1330, 1341 (5th Cir. 1996) (holding that intention to consider an upward departure, transmitted with six days' notice in advance of sentencing by fax, was sufficient).

[4] The court noted its belief that Andrews was trying to shift blame to his deceased mother and had not made what it considered legitimate efforts at restitution, which were both ultimately considered with regard to whether Andrews had accepted responsibility. The court highlighted its concerns regarding the disparity between federal drug and fraud crime sentences under the guidelines, which was listed under one of the four major sub-point justifications in the written opinion supporting an upward departure. Finally, the court compared the case to another recently-upheld upward departure, which was also listed as a major sub-point justification in the subsequent written opinion.

[5] *See* 501 U.S. at 136.

[6] *Cf. United States v. Knight*, 76 F.3d 86, 88 (5th Cir. 1996) (holding that adequate notice exists for upward *enhancements* for factors presently in the guidelines to allow an average defense counsel adequately to prepare for sentencing).

4

erally discussing "victim-related" and "offense-related" factors,[7] is incorrect, because it goes against the plain meaning of rule 32(h), requiring that the court ". . . *specify* any ground on which the court is contemplating a departure" (emphasis added). Allowing the court broadly to open the door to use any victim- or offense-related departure factor merely by mentioning one when notice of departure is given, provides defense counsel no guidance and thus tramples on the objectives of rule 32(h) and *Burns*, of allowing counsel meaningfully to object. Despite the fact that the court gave notice of most of the grounds that ultimately were used for departure, it still was error not to give notice of all that were considered, because the plain text of rule 32(h) commands the court to ". . . specify *any* ground . . . " (emphasis added).

The government has failed to meet its burden of showing that the error in not notifying Andrews of the specific grounds for upward departure was harmless. Because, at sentencing, Andrews appropriately objected to lack of notice, the burden is on the government to show that the error was harmless.[8] In sentencing cases, the burden is on the government to show that absent the error, the sentence would have been the same.[9] The government has

provided only a bare assertion that Andrews would have done nothing differently if given proper notice, but Andrews has presented arguments that he could have made to oppose the departure if he had had adequate notice, a situation other courts have found insufficient to satisfy the government's burden.[10] The error is not harmless, and Andrews would be entitled to remand on the ground of defective notice even if the factors used to grant his upward departure were appropriate, which as we discuss *infra*, they were not.

### III.

Andrews also contends that his sentence should be vacated and remanded for resentencing because the upward departure was based on improper factors. We agree.

### A.

When reviewing whether a sentencing departure is based on appropriate factors, 18 U.S.C. § 3742(e) guides our inquiry and imposes a standard of review. It provides as follows:

> Consideration.SSUpon review of the record, the court of appeals shall determine whether the sentenceSS
>
> . . .
>
> (3) is outside the applicable guideline range, and

---

[7] The government argued that the fact that the district court noted the vulnerability of the elderly widow gave notice of the use of any "victim-related" departure factors, and the fact that the case was compared to another fraud case in which an upward departure was upheld gave notice of the potential use of any "offense-related" factors.

[8] *See United States v. Olano*, 507 U.S. 725, 734 (1993).

[9] *See United States v. Tello*, 9 F.3d 1119, 1129 (continued...)

[9](...continued)
(5th Cir. 1993) (applying rule to misapplication of guidelines); *see also United States v. Himler*, 355 F.3d 735, 743 (3d Cir. 2004) (holding that burden is on government to show that error in failure to provide notice is harmless).

[10] *See, e.g., Himler*, 355 F.3d at 743.

5

. . .

(B) the sentence departs from the applicable guideline range based on a factor thatSS

(i) does not advance the objectives set forth in section 3553(a)(2);[11] or

(ii) is not authorized under section 3553(b);[12] or

(iii) is not justified by the facts of the case . . . .

18 U.S.C. § 3742(e). The standard of review for this subsection has been recently changed to *de novo* by the 2003 amendments pursuant to the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act (the "PROTECT Act"), as interpreted in *United States v. Bell*, 371 F.3d 239, 243 (5th Cir. 2004). In addition to the explicit requirements set forth in § 3742(e)(3)(B), decisions by the Sentencing Commission that a particular categorical basis for departure is permissible or impermissible are determinative in reviewing a departure under subsections (i) and

(ii).[13]

### B.

In its written opinion supporting departure, the court listed its justifications under four subheadings: (1) "Lack of Acceptance of Responsibility"; (2) "Punishment Consequences Not Present"; (3) "Comparison to Other Departures by This Court"; and (4) "Comparison of Sentences in Financial Crimes with Guideline Punishment in Low-Level Drug-Offenses." We examine each in turn.

### 1.

The court erred in considering failure to accept responsibility as justification for an upward departure, because that factor is already considered and factored into the guidelines. *See* U.S.S.G. § 3E1.1. Listed under a major subheading in its opinion supporting upward departure, the court found that Andrews had not completely accepted responsibility as shown by (1) a lack of paid restitution; (2) his attempts to blame his conduct on the influence of his mother; and (3) a perceived lack of sincerity in his proffered words of remorse.

Instead of inappropriately granting an upward departure on this ground, the court should have used its discretion to deny a three-level downward adjustment for acceptance of responsibility, which, curiously, the court instead granted. The comments to § 3E1.1 contemplate denying the downward adjustment where a defendant has pleaded guilty and admitted fault, but his conduct contradicts his words. *See id.* cmt. 3. This was what the court seemed to find in this case, when it commented on the defendant's sincerity and demeanor, and such a determination by the

---

[11] The objectives enumerated in § 3553(a)(2) are (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (B) to afford adequate deterrence for criminal conduct; (C) to protect the public from further crimes by the defendant; and (D) to provide the defendant with needed educational training, medical care or other correctional training.

[12] Section 3553(b) provides that the court shall impose a sentence with the applicable guideline range unless "there exists an aggravating or mitigating circumstance of any kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines."

[13] *See Bell,* 371 F.3d at 244 (citing *United States v. Thurston*, 358 F.3d 51 (1st Cir. 2004)).

6

sentencing court would have been subject to "great deference" on review. *See id.* cmt. 5.

Although upward departures are allowed for obstruction of justice in some cases, the government is wrong in attempting to recast the "Lack of Acceptance of Responsibility" justification along those lines. First, upward *enhancements* for obstruction of justice are already accounted for under the guidelines. *See* U.S.S.G. § 3C1.1. The government cites two cases in which upward *departures* were allowed beyond the two-level increase provided under the guidelines, but those courts emphasized that the government had demonstrated that the obstruction was so serious that the guidelines had not taken the activity into account in the standard § 3C1.1 enhancement.[14]

Andrews's conduct is distinguishable from that in both cases as not nearly as severe. Although he may have attempted to shift blame on an unavailable co-conspirator (his now deceased mother), his actions did not cause her to be unavailable as with the defendant in *Ismoila*, 100 F.3d at 398. Andrews may have been remiss in failing to pay adequate restitution to the victim, but he did not make fraudulent disclosures to officials to understate his ability to pay or hide assets to avoid obligation as did the defendant in *Merritt*, 988 F.2d at 1305. Even if the court meant to base the justification for upward adjustment under "Lack of Acceptance of Responsibility" on obstruction of justice, it never made specific findings that it was of the kind so egregious that it deserved stronger treatment than is already contemplated by a possible upward *adjustment* under § 3C1.1.

2.

The court erred in considering socio-economic status in giving Andrews an upward adjustment, because that is explicitly a prohibited departure factor under the guidelines.[15] The court highlighted "elements of punishment and loss" that are normally present with other fraud defendants but not with Andrews, such as, "loss of mega income, removal of professional licenses and political power, forfeiture of mansions and limousines, and . . . being booted from the country club and losing other indicia of social status."[16] According to this curious logic, a downward departure should be given to a wealthy white-collar defendant because of loss of his limousine and "mega income" job. Departure on these grounds is plainly prohibited.

3.

The court failed to provide adequate justification for its upward departure in comparing

---

[14] *See United States v. Ismoila*, 100 F.3d 380, 398 (5th Cir. 1996) (finding that a combination of the fact that defendant was harboring a co-conspirator while blaming him in court for the offense was substantially serious obstruction warranting an upward departure); *see also United States v. Merritt*, 988 F.2d 1298, 1310 (2d Cir. 1993) (finding that defendant had gone "far beyond" simple "failure to pay restitution" and "concealment of assets" to warrant upward departure despite upward adjustments available under guidelines).

[15] *See* U.S.S.G. § 5H1.10; *see also United States v. Painter*, 375 F.3d 336, 338 (5th Cir. 2004) (finding that affluence was improperly considered as a factor in upwardly departing); *see also United States v. Stout*, 32 F.3d 901, 903-04 (5th Cir. 1994) (finding that defendant's status as a judge and maintenance of an "excessive lifestyle" were improper grounds for departure); *see also United States v. Hatchett*, 923 F.2d 369, 373-74 (5th Cir. 1991) (finding that court improperly considered wealth in granting upward departure).

[16] *Andrews,* 301 F. Supp. 2d at 610.

7

Andrews's case to other fraud cases in which departures were granted. The court found that the facts put Andrews in the "firmament" with defendants granted upward enhancement in two other criminal fraud cases[17] and not with two others who were granted downward adjustments in two other cases. The court merely cited the cases without any description of *how* Andrews's situation is similar or distinguishable.[18]

Though it might be legitimate to justify an upward departure based on the similarity of elements in the case at hand to those in other fraud cases that justified an upward departure, the district court favored us with no such adequate analysis. The court merely cited cases, neither of which is directly on-point as far as the grounds for an upward departure are concerned.[19] The court cannot skirt its obligation to provide written justifications merely by

summarily stating that the case is similar enough to others in which the defendants committed the same class of crime and upward departures were justified.

4.

The court erred in considering the difference between drug and fraud sentences under the guidelines. Mere disagreement with the structure of the guidelines is not a legitimate reason for departure.[20]

Irrespective of whether the court was correct, as a matter of public policy, that fraud defendants should be punished more severely than low-level drug offenders who commit offenses merely to provide subsistence to their families, the court overstepped its authority by departing on such grounds. The guidelines are constitutional in the Fifth Circuit and are binding on federal courts in meting out sentences.[21] The guidelines provide a mechanism for judges to provide upward or downward departures in particular cases where particular circumstances exist and particular procedures are followed; merely allowing departure where a judge disagrees with the proportionality of different types of crimes would frustrate the purposes

---

[17] The district court cited *United States v. Cerda*, No. 02-50697 (5th Cir. Apr. 23, 2003) (unpublished), and *United States v. Delossantos*, 85 Fed. Appx. 398 (5th Cir. 2004) (unpublished), in which we affirmed upward departures.

[18] In determining whether Andrews deserves an *upward* departure, it is logically irrelevant whether his situation is similar to that in cases in which *downward* departures were granted. If the district court validly granted downward departures in those cases, and the only issue in this case is whether Andrews should be sentenced within the applicable range or above it, then Andrews's conduct is necessarily outside the "firmament" of those cases in which downward departures were granted.

[19] In *Cerda*, we upheld an upward departure for defendants who opportunistically used the September 11, 2001, terrorist attacks fraudulently to solicit money for a phony charity, and in *Delossantos* we affirmed a departure based on post-plea continuing criminal conduct.

[20] *See United States v. Lopez*, 875 F.2d 1124, 1126 (5th Cir. 1989); *see also* U.S.S.G. § 5K2.0, cmt. (stating that "dissatisfaction with the available sentencing range or a preference for a different sentence than that authorized by the guidelines is not an appropriate basis for a sentence outside the applicable guideline range").

[21] *See Mistretta v. United States*, 488 U.S. 361, 412 (1989); *see also United States v. Pineiro*, 377 F.3d 464 (5th Cir. 2004), *petition for cert. filed* (July 14, 2004) (No. 04-5263).

of the sentencing scheme.[22] Congress, through the Sentencing Commission, has made the determination of which crimes deserve more punishment, and it is not the role of the judge to displace those legislative decisions.[23]

### C.

In deciding to grant an upward departure, the court pronounced justifications in its oral pronouncement that were different from those in its written opinion.[24] Although the govern

ment correctly indicates that some of these grounds might be legitimate bases for upward departure (for example, extreme psychological trauma to the victim),[25] it is not evident whether the statutory framework allows us to consider factors that were in the oral explanation but not the written one. Though § 3742(e)-(3)(C), which involves review of the reasonableness of the *extent* of an upward departure, states that the consideration of reasonableness should be based on the *written* justifications,[26] no similar limitation explicitly appears in § 3742(e)(3)(B), which involves review of the appropriateness of factors used in granting an upward departure.[27]

It is unnecessary for us to resolve this ambiguity and consider the legitimacy of the oral justifications for upward departure, because

---

[22] *See* U.S.S.G. § 1A.3 ("Congress sought proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of differing severity.")

[23] The district court seems more comfortable with sentencing Andrews based on Dante's levels of hell, but such a sentencing scheme has not been accepted as the law in this or any other federal circuit. *See Andrews,* 301 F. Supp. 2d at 609 (stating that the "Eighth Circle" would be appropriate for Andrews's co-conspirator); *see also id.* at 612 (stating that the "Fourth Circle" is appropriate for those who prey on the elderly); *but cf. United States v. Winters*, 117 F.3d 346, 348 (7th Cir. 1997) (affirming denial of a downward departure despite district court's feeling that defendant belonged on a lower level of hell, citing Dante's *Inferno*).

[24] In its oral pronouncement of sentence, the court made many findings, including (1) that the guidelines are "completely out of whack" and the recommended 15 months for the defendant did not seem right; (2) that Carson's loss of financial security was "traumatic"; (3) that the offense involved identity theft, not taken into account by the Sentencing Commission when creating the doctrine; (4) that Andrews's failure to make substantial restitution belied his claim of recent spiritual awakening; and (5) that there was a "bullying aspect" to the offense based on the difference in size
(continued...)

(...continued)
between Andrews and Carson.

[25] *See* U.S.S.G. § 2F1.1, cmt. 11(c) (allowing for upward departure where there is extreme psychological trauma to the victim).

[26] Title 18 U.S.C. § 3742(e)(3)(C) states that the appellate court will consider whether "the sentence departs from the applicable guidelines range, having regard for the factors to be considered in this title and the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of § 3553(c)." Title 18 U.S.C. § 3553(c)(2) imposes a requirement that when a particular sentence is outside the appropriate guidelines range, it must state "[t]he specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in the *written* order of judgment and commitment . . ." (emphasis added).

[27] *See Bell*, 371 F.3d at 245 (noting that the statutory framework in this respect is "unclear").

the decision was based on *at least* one impermissible factor that caused the sentence to be too high, requiring remand, and on remand here the district court may consider only justifications given in its written opinion that we approve of as legitimate.[28] Hence, we here consider only the justifications given in the written explanation.[29]

### D.

The court's attempt to insulate its upward departure by announcing an alternative consecutive sentencing ground is improper. The guidelines provide that fraud offenses "involving substantially the same harm shall be grouped together into a single Group."[30] Once grouped, the resulting sentences are to run concurrently.[31] It is startling that the district court attempted to insulate his use of improper departures on this groundSSindeed, we recently have reversed the same judge for precisely this error.[32]

### IV.

Andrews requests that on remand, this case should be assigned to a different judge. We have the supervisory power to do so,[33] but it is "extraordinary" and should be exercised with the "greatest reluctance"[34] We have declined to reassign absent a showing of bias or antagonism indicating that the judge would refuse impartially to weigh evidence or make objective decisions on remand.[35]

Assignment to a different judge is appropriate where the first judge departed based on his "subjective dissatisfaction with the Guidelines' sentencing constraints." *United States v. Maldonado-Montalvo*, 356 F.3d 65, 73 n.10, 75-76 (1st Cir. 2003). Here the judge based its departure "first and foremost" on his personal disagreement with the guidelines.

We exercise the power of reassignment because of this judge's brazen antagonism to

---

[28] *See* 18 U.S.C. § 3742(f)(2)(A) (requiring remand where departure is based on "an impermissible factor" that caused the sentence to be too high); *see also* 18 U.S.C. § 3742(g)(2) (limiting district court on remand to using justifications for upward departures to those found in the original written opinion and approved of by appellate court).

[29] Even if we were to find that all the written justifications for upward departure were legitimate, a remand would still have been appropriate because of possible improper factors that were only mentioned orally at sentencing and not subsequently memorialized in the written opinion. In *Bell*, 371 F.3d at 246, we remanded for resentencing where the court identified the *possible* consideration of mental health, an improper factor in determining a downward departure, despite the subsequent written justifications for departure all being legitimate. Here, the fact that the court orally mentioned a physical disparity in Andrews's and Carson's respective body sizesSSwhile oddly noting that it was irrelevant to the execution of the criminal offenseSSmight have been sufficient on its own to warrant a remand for resentencing.

[30] U.S.S.G. § 3D1.2.

[31] *See* U.S.S.G. § 5G1.2, cmt. n.1.

[32] *See United States v. Candelario-Cajero*, 134 F.3d 1246, 1248 (5th Cir. 1998).

[33] *See United States v. Winters*, 174 F.3d 478, 487 (5th Cir. 1999).

[34] *See id.* (internal citations omitted).

[35] *See id.* at 487-88.

both the tenets of the guidelines and to Andrews, as indicated during the sentencing proceedings. This is far from the first time we have had to reverse this judge for blatantly electing to ignore the plain language of the guidelines.[36] Accordingly, we remove the district judge from this case because he has breached the barrier between the rule of law and the exercise of personal caprice.

V.

On remand, the district court's discretion is restricted by the dictates of the PROTECT Act, 18 U.S.C. § 3742(g). According to that provision, if a case is remanded based on the use of an improper factor in resentencing, the court on remand cannot depart from the applicable guidelines range unless the ground "was specifically and affirmatively included in the written statement of reasons" and "was held by the court of appeals, in remanding the case, to be a permissible ground of departure." 18 U.S.C. § 3742(g)(2).

We reject the government's argument, based on *United States v. Phipps,* 368 F.3d 505 (5th Cir. 2004), that the limitations imposed by § 3742(g) should not apply if the case is remanded to a different judge. In *Phipps*, we held that § 3742(g) is inapplicable where the district court did not depart in the original sentence and the need for departure arose as a result of the appellate mandate. *See*

id. at 512-13. The *Phipps* court reasoned that such a departure did "not fit within the purpose of § 3742(g), 'to prevent sentencing courts, on remand, from imposing the same improper departure using a different theory.'"[37]

*Phipps* is distinguishable from this case, because here the court did impose a departure that is the subject of the instant appeal; the grounds for departure did not become "newly-germane as a result of our correction of the sentence." *Id.* at 512. Moreover, the plain language of § 3742(g) appears to handcuff any court on remand; the prohibition is directed to "*a* district court on remand" and does not distinguish between an original sentencing judge and a new court. 18 U.S.C. § 3742(g) (emphasis added). The statute further states that on remand the court is limited to the reasons that were "in the written statement of reasons required by section 3553(c) in connection with the previous sentencing of the defendant prior to appeal," referring to the previous sentencing generally and not to any particular judge. 18 U.S.C. 3742(g)(2)(A).

Further, under § 3742(g)(2) the only reasons that may be considered by the new judge on remand are grounds for departure that were organized under the sub-heading "Reasons for Departure" in the first judge's written opinion. *See Andrews*, 301 F. Supp. 2d 609-11. The government argues that other reasons that were mentioned elsewhere in the opinion, but were not fully developedSSfor example, the fact that this case involved identity theftSSshould be legitimate grounds for departure on remand because they were referenced

[36] *See, e.g., United States v. Phillips*, 382 F.3d 489 (5th Cir. 2004) (reversing the same judge for granting downward departure below mandatory minimum sentence under the guidelines); *see also Candelario-Cajero*, 134 F.3d 1246 (reversing the same judge for assessing consecutive sentences in contravention of specific guidelines requirement of concurrent sentences for the specific offense in question).

[37] *Id.* at 513 (citing H.R. Conf. Rep. No. 108-66, at 59 (2003), *reprinted in* 2003 U.S.C.C.A.N. 683, 694).

somewhere in the written opinion required by 18 U.S.C. § 3553(c).[38] Because the judge chose to place this information in the "Background" section, rather than specifically delineate why this factor may have warranted an upward departure under his neatly organized section entitled "Reasons for Upward Departure," any discussion of identity theft was merely precatory and not "*specifically and affirmatively* included in the written statement of reasons" as required by the statute.[39]

Consequently, the new judge on remand may assess an upward departure only on the ground that the facts of this case are similarly egregious to those in other fraud cases in which courts have granted upward departures, so long as the justification is adequately developed. In addition, the judge may consider making or denying any other upward or downward adjustments that are available under the guidelines (for example, denying Andrews the three-level downward adjustment for acceptance of responsibility previously granted by the original judge), because § 3742(g) applies only to departures and not to enhancements or adjustments.

The original judge appears to have been motivated in part by a desire to hammer Andrews with a long sentence one way or the other, without paying attention to the dictates of the law. The irony is that the court would likely have been able to achieve the result it desired if it had properly considered the guidelines and applied appropriate factors that likely are present in this case, but now that outcome will be impeded by the restrictions imposed by the PROTECT Act on remand for re-sentencing. At the end of the day, Andrews may deserve 120 months in prison for his reprehensible criminal acts, but he also deserves to be sentenced according to law.

VI.

We are disappointed that the United States Attorney's Office was unwilling in its brief, and until pressed hard by this court on oral argument, to acknowledge even a *single* error in the way the original judge conducted these proceedings. The government's brief, which argued stridently that every one of the district court's decisions actions was justified, is surprising to this court, because the responsibility of the Department of Justice, in its representation of the United States in criminal proceedings, is to do justice and to see to it that the law is followed, not to obtain the highest possible sentence in every case. We do understand, however, that the government was faced with a difficult situation: a district judge who is not willing to follow the sentencing guidelines, but a defendant who was guilty of a serious and despicable offense and deserves a lengthy term of imprisonment.

The judgment of sentence is VACATED, and this matter is REMANDED for further proceedings before a different district judge, in accordance with this opinion.

_____

[38] *See Andrews,* 301 F. Supp. 2d at 608 n.2.

[39] *See* 18 U.S.C. § 3742(g)(A)(2) (emphasis added).