**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**November 20, 2003**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 03-20194

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

RUBY D. HENRY BELL,

Defendant-Appellee.

--------------------
Appeal from the United States District Court
for the Southern District of Texas

--------------------

Before JOLLY and WIENER, Circuit Judges, and WALTER,* District
Judge.

PER CURIAM:

Defendant-Appellee Ruby D. Henry Bell was convicted on a plea
of guilty for using a telephone to convey a false threat to damage
or destroy a building by means of an explosive, in violation of 18
U.S.C. § 844(e). At sentencing, the district court granted a
defense motion to depart downward within the U.S. Sentencing
Guidelines ("U.S.S.G." or the "Guidelines") from a criminal history
category of VI to a criminal history category of IV. The district
court appears to have granted this motion on the basis of

---

* District Judge for the Western District of Louisiana,
sitting by designation.

overstatement of criminal history, as provided for by Guidelines § 4A1.3; however, the sentencing colloquy also discussed Bell's mental health issues and the court's concern that incarceration would lead to a break in her mental health treatment, which the court wanted to avoid. Because the district court conflated the elements of several distinct Guidelines provisions in its discussion of the downward departure, making the true basis for that departure unclear, we vacate and remand for resentencing.

## I. Facts and Proceedings

In an apparent attempt to force the cancellation or postponement of her probation hearing, Bell telephoned police and mendaciously informed them that Pakistani terrorists had planted a bomb at the Brazos County Courthouse in Bryan, Texas. Acting on Bell's false report, state and local police, as well as the FBI, initiated an intense investigation, which resulted initially in the arrest and incarceration of a Pakistani immigrant.[1] Cellular telephone records helped the police identify Bell as the caller, after which she was indicted and charged under 18 U.S.C. § 844(e).

Bell pleaded guilty to the indictment, and the pre-sentence report (PSR) recommended a total offense level of 6, a criminal history category of VI, and a guideline imprisonment range of 12 to

---

[1] The investigation uncovered the fact that the arrested individual had forged documents to enter the United States.

2

18 months.  Bell did not object to the PSR,[2] but she made a motion for downward departure, which the district court granted, revising her criminal history category downward from VI to IV.  This departure made Bell eligible for probation, and the court assessed a "term of probation" of three years, subject to conditions that included six months' home confinement, community service, and participation in treatment programs for drug and alcohol addiction and mental health.

## II.  Analysis

A.  Standard of Review

On April 30, 2003, the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 —— the PROTECT Act (the "Act") —— was signed into law.[3]  The Act changed the standard of review applicable when courts of appeals consider departures from the Guidelines, but only in specified situations. Because the Act became effective after Bell was sentenced and after the government filed its notice of appeal, we must decide (1) whether the Act applies retroactively to litigants in Bell's position, and (2) if so, whether the Act changes the standard of review in the instant case, given the circumstances surrounding the district court's departure.

1.  <u>Retroactivity</u>

---

[2] Bell did correct two factual inaccuracies in the PSR, but neither is relevant to our discussion today.

[3] Pub. L. 108-21, 117 Stat. 650 (April 30, 2003).

3

Although we have not yet considered the Act's new standard of review, we have examined retroactive application of newly-announced standards of review generally. In United States v. Mejia, we characterized a change in the standard of review as "procedural rather than substantive because it neither increases the punishment nor changes the elements of the offense or the facts that the government must prove at trial."[4] As the Supreme Court has long held that procedural changes in the law may be applied retroactively without violating the Constitution's ban on *ex post facto* laws,[5] we held in Mejia that the trial court correctly applied a standard of review that was announced after the actions that led to the criminal charge in that case.

The two other circuit courts that have considered the Act's standard-of-review provision have based their ultimate decision — to apply such standard retroactively — on the well-known

---

[4] 844 F.2d 209, 211 (5th Cir. 1988).

[5] See, e.g., Miller v. Florida, 482 U.S. 423, 430 (1987)("[N]o *ex post facto* violation occurs if a change does not alter 'substantial personal rights,' but merely changes 'modes of procedure which do not affect matters of substance.'" quoting Dobbert v. Florida, 432 U.S. 282, 293 (1977)); Lindh v. Murphy, 521 U.S. 320, 327 (1997)(noting that if the statute at issue "were merely procedural in a strict sense (say, setting deadlines for filing and disposition ...), the natural expectation would be that it would apply to pending cases.")(citation omitted).

4

procedural/substantive dichotomy.[6]  As the First Circuit explained

in United States v. Thurston,

> Changing the appellate standard of review, as done here, could upset no legitimate reliance interest by a defendant, could not have induced alteration of the behavior that led to the crime, and could not have upset settled expectations. We see no unfairness to defendants in Congress's requiring a closer look by appellate courts at whether a district court committed an error in deciding that the guidelines permitted a departure.[7]

We agree with that concise statement of the issue, and conclude

that the Act's de novo standard of review may be applied in cases,

like the instant one, in which sentencing occurred before the Act's

enactment date.   This comports with the Supreme Court's

retroactivity jurisprudence as well as our prior holding in Mejia.

2.  Applicability of the De Novo Standard

Prior to the Act, we reviewed a district court's decision to

depart from the Guidelines for abuse of discretion.[8]   The Act

explicitly changed the standard of review, but only when courts of

appeals are considering determinations under subsections (3)(A) or

---

[6] Although the Eighth Circuit, in United States v. Hutman, 339 F.3d 773 (8th Cir. 2003), simply applied the de novo standard summarily, it did cite to Mejia, indicating that the procedural/substantive distinction was the basis for that part of its holding.

[7] 338 F.3d 50, 72 (1st Cir. 2003).

[8] See United States v. Harris, 293 F.3d 863, 871 (5th Cir. 2002) ("We review a district court's departure from the range established by the Guidelines for abuse of discretion. ... The district court's decision is accorded substantial deference because it is a fact intensive assessment and the district court's findings of fact are reviewed for clear error.")(citation omitted).

(3)(B) of 18 U.S.C. § 3742 (e).  In all other instances, we still
employ an abuse of discretion standard:

> The court of appeals shall give due regard to the
> opportunity of the district court to judge the
> credibility of the witnesses, and shall accept the
> findings of fact of the district court unless they are
> clearly erroneous and, <u>except with respect to
> determinations under subsection (3)(A) or (3)(B)</u>, <u>shall
> give due deference</u> to the district court's application of
> the guidelines to the facts.  <u>With respect to
> determinations under subsection (3)(A) or (3)(B), the
> court of appeals shall review de novo</u> the district
> court's application of the guidelines to the facts.[9]

Subsection 3(A) deals with a district court's failure to include a
written statement of reasons for the departure, as required by 18
U.S.C. § 3553(c), and is inapplicable in the instant case.  Thus,
if we conclude that our review of the instant case does not fall
under subsection 3(B) either, the <u>de novo</u> standard of review
specified in the Act would be inapplicable here.

Subsection 3(B) mandates that courts of appeals should
determine whether "the sentence departs from the applicable
guideline range based on a factor that – (i) does not advance the
objectives set forth in section 3553(a)(2); or (ii) is not
authorized under section 3553(b) ; or (iii) is not justified by the
facts of the case."  We read this language to mean that if  a
district court departs based on a factor that <u>does</u> advance the
objectives set forth in section 3553(a)(2), then review of that
determination does not fall under subsection 3(B).

---

[9] 18 U.S.C. § 3742(e)(as amended by the Act)(emphasis added).

One objective listed by § 3553(a)(2) is "the need for the sentence imposed ... (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Bell's sentencing colloquy makes clear that the district court was most concerned about the interruption that incarceration would cause in Bell's mental health treatment, mentioning this several times before announcing its decision:

> So I'm conflicted between my strong desire to see Ms. Bell punished for her actions in this particular case and <u>my concern about a [sic] creating a break in her mental health treatment that she's currently receiving</u>, which I think would be the unfortunate result of a period of incarceration.... [E]ven [though] the potential period of incarceration is so limited, I think that <u>there is a significant likelihood that there would be a break in her mental health treatment and counseling that would be too long</u>, and that a period of incarceration of the length that we're talking about would put us in a position of ... <u>putting Ms. Bell back into the community in not as good a mental health state as she currently has as a result of that break in treatment. So I'm going to grant the motion for downward departure on this basis</u> ... (emphasis added).

We find inescapable the conclusion that the district court's evident concern about a break in Bell's treatment was a "factor" on which the departure was based. As that factor advanced the objective that Bell receive "needed ... medical care ... in the most effective manner," Bell's sentencing is not a determination under 18 U.S.C. § 3742(e)(3)(A) or (B), so our traditional abuse of discretion standard of review still applies.

7

The government argues that because the Statement of Reasons attached to the judgment notes only over-representation of criminal history as the basis for the downward departure,[10] we may not consider the district court's evident concern with Bell's mental health treatment.  As support for this proposition, the government notes statutory provisions that require the written statement of reasons.[11]  These provisions, however, discuss situations in which the district court has "failed to provide" the required statement of reasons with the order of judgment.  There is no dispute that here the district court did "provide" a written statement of reasons; thus, the relevant inquiry is whether we can consider a factor that obviously played a significant role in the district court's decision but was not mentioned in that statement of reasons.

In the end, we cannot see why we would not consider the sentencing colloquy as well as the court's written reasons.  The statutory language at issue neither defines "factor" nor expressly limits an appellate court's consideration of factors underlying a sentencing departure to those expressed in the statement of reasons.  Under these circumstances, and mindful of the statutory

[10]  Immediately following its statements quoted above, the district court indicated that the basis for its decision was over-representation of criminal history: "So I'm going to grant the motion for downward departure on this basis, on the basis of the criminal history issue."

[11]  The government points to 18 U.S.C. § 3742 (e)(3)(A) and (f)(2)(B) on this issue.

8

canon of construction that we give terms their ordinary and common meaning,[12] we are satisfied that the district court's desire to prevent an interruption of Bell's mental health care was a factor[13] on which the downward departure was based, at least in part. As the departure thus furthered the goal of § 3553(a)(2)(D), our review of that departure is not controlled by § 3742(e)(3)(A) or (B), and we do not apply the de novo standard of review established by the Act. Instead, we review the departure for abuse of discretion, and the findings of fact for clear error.[14]

---

[12] See, e.g., Perrin v. United States, 444 U.S. 37, 42 (1979)("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.").

[13] Distinct from its common-law commercial agent definitions, Black's Law Dictionary defines "factor" as "[a]ny circumstance or influence which brings about or contributes to a result...." BLACK'S LAW DICTIONARY 592 (6th ed. 1990).

[14] See United States v. Harris, 293 F.3d 863, 871 (5th Cir. 2002).

B. Downward Departure

With the proper standard of review established, we now consider whether the district court abused its discretion when it departed downward on the express basis of an over-represented criminal history. The Guidelines indicate that a downward departure may be appropriate when "reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes."[15] The Guidelines require that the sentencing court "specify in writing ... (2) [i]n the case of a downward departure, the specific reasons why the applicable criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes."[16] Given the presence of the statutorily-required written statement of reasons in the instant case, we again encounter the problem that we had to address in our determination of the applicable standard of review, viz., that the court's written statement of reasons does not mention the factors that appear to have figured most prominently in its decision to depart downwardly, as demonstrated in the sentencing colloquy.

---

[15] U.S.S.G. § 4A1.3(b)(1).

[16] U.S.S.G. § 4A1.3(c).

10

To repeat, the sentencing colloquy reflects the district court's desire to prevent an interruption in Bell's mental health treatment, its belief that her "mental health problems" were a factor in her previous crimes, and its finding that "her diminished capacity has been aggravated somewhat by the fact that she was overmedicated for a time." In contrast, the court's written statement of reasons indicates only that "the nature of the defendant's criminal history, which is comprised mostly of non-violent, petty theft offenses, overrepresents her criminal history category." The written statement makes no mention of other factors.

The government asserts that (1) the record does not reflect that Bell's criminal history category significantly over-represented the seriousness of her criminal behavior or her likelihood of recidivism, and (2) mental and emotional conditions can only be relevant when considering a downward departure under U.S.S.G. § 5K2.13. For the latter proposition, the government cites our 2000 decision in United States v. Thames, in which we concluded that "the guidelines have already adequately taken into consideration a defendant's mental capacity with § 5K2.13, and thus § 5K2.0 is inapplicable to Thames'[s] claim that his diminished mental capacity, derived from his gambling addiction, entitles him to consideration for a downward departure."[17]

---

[17] 214 F.3d 608, 615 (2000). U.S.S.G. § 5K2.0(a) allows a district court to base a departure on "an aggravating or mitigating

11

The defendant in Thames argued that "his mental condition made his criminal conduct 'inadvertent behavior,'" essentially trying to argue diminished capacity under U.S.S.G. § 5K2.0 instead of § 5K2.13.[18] Although the Thames decision certainly informs our decision today, we believe that the instant case is distinguishably different. Here, the question is whether three distinct factors —— (1) the district court's finding that Bell had been over-medicated for a period of time,[19] (2) the defendant's history of mental illness, and (3) the district court's belief that the defendant was "receiving adequate mental health treatment and counseling" at the time of sentencing and that interruption of that treatment would not "serve the defendant or the society well" —— can provide justification for the district court's ruling that a criminal history category of VI "substantially over-represents the seriousness of the defendant's criminal history or the likelihood

---

circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...."

[18] Thames, 214 F.3d at 614.

[19] This is a factual finding, to be reviewed for clear error in the instant case. We cannot say that the district court clearly erred in determining that Bell had been over-medicated in the past, and in fact the government, although still contesting the downward departure, conceded during the sentencing hearing that it "[did not] doubt that her being overmedicated by the psychotropic drugs that she was taking is a factor in this case ..."

12

that the defendant will commit other crimes."[20]  We believe, with some caveats, that they can.

The district court appears to have concluded that the defendant's history of mental illness, in combination with her over-medication during the period in which some of her prior crimes were committed and the non-violent, "petty" nature of those crimes, made a criminal history category of VI inappropriately high.  One distinct factor that appears to have motivated the district court was a desire to prevent a break in Bell's mental health treatment, which the court evidently believed would undermine her progress and subvert the goal advanced by § 3553(a)(2)(D).  It would not be a per se abuse of discretion for the district court to find that a history of over-medication by psychotropic drugs, combined with prior offenses that are nonviolent, "petty" crimes, are adequate bases for a downward departure under U.S.S.G. § 4A1.3.[21]  Neither would it necessarily be an abuse of discretion for a district court to justify a downward departure under Guidelines § 5K2.0 on the court's determination to prevent a break in mental health treatment based on factual findings that incarceration would occasion such a break and thereby be detrimental to society's and the defendant's interests.  At the same time, our Thames decision forecloses

---

[20] U.S.S.G. § 4A1.3(b)(1).

[21] If this were the only basis for departure, however, we might subject such a decision to de novo review, because the desire to prevent a break in treatment would not be implicated.

13

consideration of mental health as the basis for a downward departure when that factor implicates diminished capacity regarding the crimes at issue, except under U.S.S.G. § 5K2.13.[22]

The sentencing court's written statement of reasons is unclear, however, as to which of the foregoing factual possibilities, if any, is applicable in the instant case. The district court might have improperly considered Bell's mental health in contravention of Thames; or it might have examined factors under Guidelines §§ 4A1.3 and 5K2.0, concluded that a downward departure was appropriate, yet failed to include a detailed identification of its reasons in the written statement.

In any event, we cannot resolve the uncertainty from the court's written statement, and we decline to proceed without a clearer understanding of the district court's reasons. Even under the deferential abuse-of-discretion standard, we must have enough information to determine what conclusions the district court reached, before we can decide whether its actions were within its exercise of discretion. We therefore vacate Bell's sentence and remand her case to the district court to clarify its reasoning. Otherwise, the written statement requirement would be feckless in cases such as this.

### III. Conclusion

---

[22] As was the case in Thames, a downward departure under U.S.S.G. § 5K2.13 is not available to Bell because her crime involved a "serious threat of violence."

14

For the foregoing reasons, Bell's sentence is VACATED and her case REMANDED for resentencing consistent with this opinion.

E. GRADY JOLLY, Circuit Judge, specially concurring:


I concur in the vacating of Bell's sentence. I write only to say, respectfully, that given the seriousness and length of the defendant's criminal record and the seriousness of the crime she committed, any sentence reduction for the reasons advanced by the district court would seem, in my opinion, unjustifiable. The sentencing guidelines make clear that Bell's mental and emotional condition is generally irrelevant when considering a downward departure under Guideline § 4A1.3. U.S.S.G. § 5H1.3.***************

---

***************Guideline § 5H1.3 provides that: "Mental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range, except as provided in Chapter 5, Part K, Subpart 2."

16