United States Court of Appeals
Fifth Circuit

**F I L E D**

April 16, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**NO. 03-30417**

_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**ISREAL C. EDWARDS,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court
for the Western District of Louisiana
02-50069-01**

_____

Before JOLLY, JONES and PRADO, Circuit Judges.

PER CURIAM:[*]

## I. BACKGROUND

On September 1, 2002, Isreal Edwards was attending a rap concert in Shreveport, Louisiana, along with fellow gang members. During the course of the concert, members of Edwards's gang and a rival gang exchanged words. The dispute escalated and weapons were drawn. In the ensuing gunfight, several bystanders and gang members were injured, some seriously. Tragically, a 16-year-old female bystander, Tatum Strogen, was shot and killed. Testimony at

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

trial indicated that Edwards was carrying a 9-mm pistol he had obtained before the concert. On appeal, it is undisputed that while Edwards was involved in the gun battle, the bullet that killed Strogen did not come from his gun.

Following Edwards's conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), the government filed a motion for an upward departure based on Strogen's death. The district court granted the government's motion and sentenced Edwards to 120 months imprisonment, the maximum allowable statutory sentence, well above the original guidelines range of 70 to 87 months. Edwards now appeals, arguing that the district court's findings were inadequate and that the government did not show a sufficient nexus between his actions and Strogen's death to support an upward departure.

After carefully reviewing the record, we affirm the district court's upward departure.

## II. DISCUSSION

### A. Standard of Review

The Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 ("PROTECT Act") was signed into law and became effective on April 30, 2003. The PROTECT Act made a variety of changes to existing law. Some of these changes relate to the responsibilities of a district court at the initial sentencing hearing, the standard of review to be

applied by the courts of appeal, and the scope of the district court's discretion on remand. See 18 U.S.C. § 3553 (responsibilities of a district court at sentencing); 18 U.S.C. § 3742(e) (standard of review to be applied by the court of appeals); 18 U.S.C. § 3742(g) (scope of a district court's discretion on remand).

In this circuit, the PROTECT Act's standard of review provisions, which effected procedural changes in the law, may be applied retroactively. See United States v. Bell, 351 F.3d 672, 674-75 (5th Cir. 2003). Thus, while Edwards was sentenced on April 23, 2003, his appeal was pending on the effective date of the PROTECT Act, and we must analyze any challenge to his sentence under the Act. See, e.g., Lindh v. Murphy, 521 U.S. 320, 327 (1997) (noting that procedural changes typically apply to pending cases).

Before the enactment of the PROTECT Act, we reviewed all departures under a unitary abuse of discretion standard. See United States v. Harris, 293 F.3d 863, 871 (5th Cir. 2002); United States v. Koon, 518 U.S. 81, 96-100 (1996). The PROTECT Act alters this standard of review.[1] A number of the courts of appeals have

_____

[1]     The relevant portion of the PROTECT Act provides that:

(e)   Consideration - Upon review of the record, the court of appeals shall determine whether the sentence
        (1)   was imposed in violation of law;
        (2)   was imposed as a result of an incorrect application of the sentencing guidelines;
        (3)   is outside the applicable guideline range, and
              (A)   the district court failed to provide the written

3

held that the PROTECT Act authorizes <u>de novo</u> review of all departures.  <u>See, e.g.</u>, <u>United States v. Stockton</u>, 349 F.3d 755, 764 (4th Cir. 2003); <u>United States v. Mallon</u>, 345 F.3d 943, 948 (7th Cir. 2003); <u>United States v. Frazier</u>, 340 F.3d 5, 14 (1st Cir. 2003); <u>United States v. Hutman</u>, 339 F.3d 773, 775 (8th Cir. 2003); <u>United States v. Jones</u>, 332 F.3d 1294, 1299-1300 (10th Cir. 2003). This court appears to have reached a different result.  <u>Bell</u>, 351 F.3d at 676 (applying the abuse of discretion standard where the district court departed based on a factor that advanced the objectives of § 3553(a)(2)).  However, under either standard, the departure applied in this case was proper.

## B.  Provision of a Written Statement

statement of reasons required by section 3553(c);
(B)  the sentence departs from the applicable guideline range, and
(i)   does not advance the objectives set forth in section 3553(a)(2); or
(ii)  is not authorized under section 3553(b); or
(iii) is not justified by the facts of the case; or
(C)  the sentence departs to an unreasonable degree from the applicable guidelines range, having regard for the factors to be considered in imposing a sentence, as set forth in section 3553(a) of this title and the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c); or
(4)  was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable.

The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and, except with respect to determinations under subsection (3)(A) or (3)(B), shall give due deference to the district court's application of the guidelines to the facts.  With respect to determinations under subsection (3)(A) or (3)(B), the court of appeals shall review de novo the district court's application of the guidelines to the facts.

18 U.S.C. § 3742(e).

4

In sentencing Edwards, the district court stated in writing that it adopted the factual findings and guideline application contained in the presentence report. The statement of reasons specifically indicated that the court concurred with the government's motion requesting a departure from the applicable guideline range because the defendant's participation in the offense resulted in the death of an individual. The court based its upward departure on the policy statement contained in U.S.S.G. § 5K2.1. The reasons provided by the district court are sufficient to satisfy its obligation under § 3553(c) and § 3742(e)(3)(A).

**C.   District Court's Upward Departure Under §§ 5K2.0 and 5K2.1**

In applying the sentencing guidelines, the courts must follow both the guidelines and the accompanying policy statements. See United States v. Urias-Escobar, 281 F.3d 165, 167 (5th Cir. 2002). Under the PROTECT Act, where the decision to depart is proper and the extent of the departure is neither too high nor too low, the court of appeals "shall affirm the sentence" imposed by the district court. See 18 U.S.C. § 3742(f)(3).

In this case, the district court departed upward from the sentencing guideline range based on the death of Tatum Strogen. The policy statements accompanying the sentencing guidelines explicitly provide that "[i]f death resulted [from a crime punishable under the guidelines], the court may increase the sentence above the authorized guideline range." See U.S.S.G. §

5

5K2.1 (2003). Edwards admits that this provision permits the district court to depart upward, but he argues that the district court did not adequately consider "matters that would normally distinguish among levels of homicide, such as the defendant's state of mind and the degree of planning or preparation" as required by the guidelines. See id. In addition, Edwards argues that the prosecution did not demonstrate a sufficient nexus between the defendant's actions and Strogen's death to warrant the departure. We disagree with both these contentions.

The sentencing transcript makes it clear that the district court considered a variety of factors including the defendant's efforts to obtain a firearm before the concert, as well as his contention that he was simply firing his weapon in self-defense. The district court also considered the "dangerousness of the defendant's conduct, [and] the extent to which death or serious bodily injury was intended or knowingly risked," as required by the guidelines, in determining the appropriate extent of the departure. See id.

Our review of the record confirms that Edwards's actions in taking a pistol to the concert, brandishing it during a firefight, and firing it into a crowded area, significantly contributed to the course of events that resulted in Tatum Strogen's death. This case falls outside the heartland of typical felon-in-possession convictions. Because the guidelines calculation for such a conviction does not adequately account for the risk

6

of injury that this defendant's actions created, an upward departure was warranted. In addition, the extent of the departure, from a guideline range of 70-87 months to a sentence of 120 months, was appropriate given the defendant's actions. In sum, under any PROTECT Act standard of review, the record leads us to reach the same conclusion as the district court: the defendant's participation in a gun battle that led to Tatum Strogen's death justified this upward departure.

## III. CONCLUSION

For the reasons discussed above, the sentence imposed by the district court is **AFFIRMED**.