# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 8, 2009

Charles R. Fulbruge III
Clerk

No. 09-60088

NATIONAL LABOR RELATIONS BOARD,

Petitioner

v.

SEAPORT PRINTING & AD SPECIALTIES INC, doing business as Port
Printing Ad and Specialties,

Respondent

On Application for Enforcement of an Order of the
National Labor Relations Board

Before GARWOOD, DAVIS, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge.

The National Labor Relations Board (the "Board") petitions for
enforcement of its order under the National Labor Relations Act (the "Act"),
dated December 28, 2007 in Case No. 15-CA-17976, requiring Seaport Printing
& Ad Specialties Inc., doing business as Port Printing Ad and Specialties
("Respondent" or the "Company"), to bargain with The Lake Charles Printing
and Graphics Union, Local 260 (the "Union") over the effects of its layoff of
bargaining unit workers following Hurricane Rita and its hiring of non-unit
personnel to fill jobs formerly held by unit workers. The Company argues that

there is not substantial evidence to support the Board's order and that the Union waived its right to bargaining. We disagree and enforce the Board's order.

## BACKGROUND

The Union was the collective bargaining agent for employees of Respondent, a printing firm in Lake Charles, Louisiana. When the collective bargaining agreement between the Union and the Company expired in February 2004, the Company refused to bargain with the Union to form a new agreement. After proceedings on the Union's resulting unfair labor practice charges, the Board determined that the Company's conduct was unlawful under the Act and ordered the Company on March 7, 2005 to bargain with the Union. *Seaport Printing & Ad Specialties*, 344 NLRB 354 (2005).[1]

On September 22, 2005—while the Board's petition to enforce its March 7, 2005 order was pending in this court—the mayor of Lake Charles ordered a mandatory hurricane evacuation of the city.[2] In response to the evacuation order, Respondent closed its printing facility and laid off its employees.[3] On September 23, 2005, Hurricane Rita struck Lake Charles.

On September 29, Respondent's owners returned to the facility and began post-hurricane cleanup and repairs. On October 8, power was restored to the facility and Respondent began limited printing operations with a skeleton crew. In the limited operations, Respondent used non–bargaining unit employees and a supervisor, as well as a few unit employees. The supervisor and at least one

---

[1] Subsequently, this court enforced the Board's order. *NLRB v. Seaport Printing & Ad Specialties Inc.*, 192 Fed. Appx. 290 (5th Cir. 2006).

[2] Our discussion of the facts borrows heavily from the Board's description of the facts. *See Seaport Printing & Ad Specialties, Inc.*, 351 NLRB 1269 (2007).

[3] The evacuation was characterized by the Board as a layoff. That determination is not at issue in this petition.

non-unit employee ran some of the printing presses, jobs previously performed by Union members.

On October 17, Respondent sent a letter to its employees who were out of work informing them that they were laid off from the Company. That letter also settled pay issues with those employees. Respondent admits that the October 17 letter was the first time the Company discussed the layoff or its consequences with its employees. Gloria Robinson, the Company's co-owner and president, testified that the Company "never contacted the [U]nion to discuss" the effects of the layoff. Further, the Company continued to assert the legality of its 2003 and 2004 actions withdrawing its recognition of the Union as the bargaining agent for the unit employees.[4]

The Union filed a charge with the Board alleging that the Company had violated the Act by laying off its Union employees and using non-Union employees to fill positions previously held by unit members without bargaining over these acts or their effects. An Administrative Law Judge ("ALJ") found that Respondent had violated Sections 8(a)(5) and 8(a)(1) of the Act[5] by laying off several employees and by using a non–bargaining unit employee and a supervisor to perform bargaining unit work without giving the Union notice and an opportunity to bargain over those decisions or their effects on the unit employees.

---

[4] The contract between the Union and the Company expired in February 2004. In the period leading up to new contract negotiations, the Company, first orally in 2003, and then in writing in 2004, indicated that it would not recognize the Union as the unit employees' representative for the purpose of renegotiating the contract. *See Seaport Printing*, 344 NLRB at 354-55.

[5] Section 8(a)(5) requires employers to bargain with employees' representatives over "pay, wages, hours of employment, or other conditions of employment." *See* 29 U.S.C. § 158(a)(5) (cross-referencing 29 U.S.C. § 159(a)). Section 8(a)(1) prevents an employer from interfering with employees' right to form a union for the purposes of collective bargaining. *See* 29 U.S.C. § 158(a)(1) (cross-referencing 29 U.S.C. § 157).

With one exception, the Board adopted the ALJ's findings of facts related to the Company's failure to bargain with the Union. With regard to its disagreement with the ALJ, the Board explained that there is a narrow exception to the bargaining requirement for "economic exigencies." *Seaport Printing & Ad Specialties, Inc.*, 351 NLRB 1269, 1269-70 (2007). This exception is limited to "'extraordinary events which are an unforeseen occurrence, having a major economic effect requiring the company to take immediate action.'" *Id.* at 1270 (quoting *RBE Electronics of S.D.*, 320 NLRB 80, 81 (1995)). Applying this principle to the instant case, the Board found that the hurricane was such an unforeseen event. Therefore, it excused the Company's failure to bargain over the layoffs that resulted from the evacuation for the hurricane. *Id.* However, the Board's majority found that the economic exigency created by the hurricane did not excuse Respondent from bargaining with the Union over Respondent's use of non-unit personnel to perform unit work or the effects of the layoffs upon the employees; that "[t]he need for immediate decision making created by the hurricane was over by the time Respondent made" these subsequent employment decisions. *Id.* at 1270. "Respondent thus had sufficient time to bargain over these decisions, but failed to do so." *Id.* Accordingly, the Board's majority found that this conduct violated Section 8(a)(5) of the Act. *Id.*

One Board Member dissented in part, concluding that Respondent was also "excused from bargaining over the effects of its decision to lay off employees and to use nonunit personnel to perform unit work because the Union had notice of those decisions but failed to request bargaining over their effects." *Seaport Printing*, 351 NLRB at 1270, 1272 (Schaumber, Member, dissenting in part). The Board's majority disagreed, however. The majority found that "the Respondent withdrew recognition from the Union in 2003 and continued to defend its withdrawal in court at the time of these events. That stance foreclosed any reasonable possibility that the Respondent would engage in bargaining." *Id.* at

1270. "In these circumstances," the Board's majority concluded, "any request to bargain by the Union over the effects of the Respondent's post-Rita decisions would have been futile" and therefore the Union could not have waived bargaining. *Id.* (citing *Smith & Johnson Construction Co.*, 324 NLRB 970 (1997)).

To remedy Respondent's violations of the Act, the Board's majority ordered, among other acts, that the Company: "bargain with the Union, on request," about the effects of Respondent's decision to lay off its unit employees and its use of "nonbargaining unit employees and supervisors to perform bargaining unit work"; pay its laid-off employees backpay as described in *Transmarine Navigation Corporation,* 170 NLRB 389 (1968), "to make whole the employees for losses suffered as a result of the Respondent's failure to bargain with the Union about the effects of its layoff decision"; and make affected employees "whole for any loss of earnings and other benefits attributable to the unlawful conduct" of "unilaterally assigning bargaining unit work to nonunit employees and at least one supervisor without bargaining with the Union."[6] *Seaport Printing*, 351 NLRB at 1270-72.

## STANDARD OF REVIEW

"We review the NLRB's legal conclusions *de novo." Sara Lee Bakery Group, Inc. v. NLRB*, 514 F.3d 422, 428 (5th Cir. 2008). "We review the Board's factual findings under a substantial evidence standard." *Id.* Substantial evidence is "'more than a scintilla'"; it is "'such relevant evidence as a reasonable mind would accept to support a conclusion.'" *Id.* (quoting *Selkirk Metalbestos, North*

---

[6] Although the Board majority's opinion may be ambivalent on the issue, we do not read its order to impose a remedy for unit employees' loss of work while the company was unable to offer such work to them. *See Seaport Printing & Ad Specialties*, *Inc.*, 351 NLRB at 1270-72 & n.4. Thus, unit members cannot receive backpay for loss of unit work when it could not have been offered or performed because of the evacuation or damage from the storm.

*Am., Eljer Mfg., Inc. v. NLRB*, 116 F.3d 782, 786 (5th Cir. 1997)) (other internal quotation marks omitted).

## DISCUSSION

Neither party contests that the Act typically requires bargaining between a company and a union over the effects of a layoff and the decision to use non-unit personnel to replace unit members. *See First Nat'l Maint. Corp. v. NLRB*, 452 U.S. 666, 681-82 (1981) (discussing the Act's requirement that a company engage in "effects" bargaining concerning a layoff); *Rd. Sprinkler Fitters Local Union No. 669 v. NLRB*, 676 F.2d 826, 831 (D.C. Cir. 1982) ("The allocation of work to a bargaining unit is a 'term and condition of employment,' and an employer may not unilaterally attempt to divert work away from a bargaining unit without fulfilling his statutory duty to bargain."); *NLRB v. Houston Chapter, Associated Gen. Contractors of Am., Inc.*, 349 F.2d 449, 452 (5th Cir. 1965), *cert. denied*, 382 U.S. 1026 (1966) (suggesting that bargaining is required whenever "the subject matter would settle any term or condition of employment, or would regulate the relations between the employer and employees" (citing *NLRB v. Wooster Div. of Borg-Warner Corp*, 356 U.S. 342, 350 (1958)).

Moreover, the Company admits that it failed to notify the Union prior to instituting the effects of its layoff and using non-unit personnel to fill positions previously held by unit members. Thus, it violated the Company's well-established bargaining obligations. As this court wrote in *NLRB v. Citizens Hotel Co.*, "[T]here must be discussion prior to the time [a] change [requiring bargaining] is initiated. An employer must at least inform the union of its proposed actions under circumstances which afford a reasonable opportunity for counter arguments or proposals." 326 F.2d 501, 505 (5th Cir. 1964); *see also Strand Theatre of Shreveport Corp. v. NLRB*, 493 F.3d 515, 520-21 (5th Cir. 2007) (holding that presenting a union with a "*fait accompli . . .* unilaterally

inform[ing] the [u]nion that [a] position had already been eliminated" violated a union's right to bargaining provided by the Act).

Respondent argues, however, that the Union waived its right to bargaining and thus the Company could not have violated its bargaining obligations. To support this proposition, Respondent points to a number of conversations that Vince Mott, the Union president, had with Company officials. Over a series of months Mott spoke with both of the Company's co-owners regarding whether he would be re-hired, whether it was appropriate for the Company to hire non-unit personnel to fill unit positions, and the extent to which he and other Union members would be compensated for the sick and vacation leave they accrued prior to the hurricane. At no point did Mott request bargaining. This, Respondent suggests, indicates that the Union, being represented by Mott, recognized that the Company was taking actions over which it could bargain and failed to properly initiate bargaining.[7]

This argument fails for two reasons. First, the Company's failure to provide the Union adequate notice of its actions requiring bargaining made it impossible for the Union to have waived bargaining. Waiver of bargaining results from a union's failure to "act with due diligence in requesting bargaining"

---

[7] For the first time at oral argument, Respondent argued in the alternative that we should hold that Mott's conversations with Company officials constituted bargaining satisfying the Act's requirements. As this issue is not properly briefed it is waived. *See United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001) ("Generally speaking, a defendant waives an issue if he fails to adequately brief it."). However, even were this issue not waived, we believe that the Board's conclusion that the Company and the Union did not engage in bargaining is supported by substantial evidence. We only understood the Company to allege that Mott represented the interests of other employees during his discussion regarding sick and vacation leave. During this conversation, Mott specifically informed the Company that he was not there as Union president, but only as an individual employee. (Although, as mentioned above, he did point out during this conversation that two other employees were entitled to certain compensation for this leave under the union's contract, compensation the company ultimately provided.) Therefore, substantial evidence supports that there was no bargaining between the Union and Respondent over the effects of the layoffs or the hiring of non-unit personnel to fill unit positions.

once the union has been "notifie[d] . . . of proposed changes." *NLRB v. Pinkston-Hollar Constr. Servs., Inc.*, 954 F.2d 306, 310 (5th Cir. 1992). Accordingly, by definition, for a union to waive its right to bargaining, it must have forgone the opportunity to request bargaining that was provided by the *prior notice* of the act given by the company. *Gulf States Mfg., Inc. v. NLRB*, 704 F.2d 1390, 1397 (5th Cir. 1983), *reh'g denied*, 715 F.2d 1020 (5th Cir. 1983) ("It is, however, well established that a union cannot be held to have waived bargaining over a change that is presented to it as a *fait accompli*."). Correspondingly, Respondent's failure to provide the notice required under the law prevented the Union's waiver of bargaining.

Second, the Company's constant maintenance of its position that it had lawfully withdrawn its recognition of the Union as the unit employees' bargaining agent freed the Union from any responsibility to request bargaining. A company's decision to challenge a union's legitimacy *a fortiori* indicates the company's unwillingness to bargain with that union and places the responsibility on the company for any failure to initiate bargaining that results. *See NLRB v. Allis-Chalmers Corp.*, 601 F.2d 870, 874 (5th Cir. 1979), *panel reh'g granted on other grounds*, 608 F.2d 1018 (5th Cir. 1979) ("As a general rule, an employer that refuses to bargain on the ground that an election is invalid does so at is peril; if the election challenge were to prove fruitless, an order by the Board based on the refusal to bargain would be enforced."). In fact, the Board has properly held, in circumstances almost identical to those presented by this case, that a company's refusal "to recognize the [u]nion as the exclusive bargaining representative" of its members, indicates to the union that it is "a pointless exercise in futility for the [union] to . . . request[] negotiation" and accordingly the company "cannot now claim that [u]nion waived its rights" to bargaining. *Fall River Sav. Bank*, 260 NLRB 911, 916 (1982) (decision of the Administrative Law Judge "affirm[ed]" by the Board). Therefore, the Company's

actions in withdrawing its recognition of the Union as the employees' bargaining representative freed the Union from its responsibility to request bargaining.

## CONCLUSION

For these reasons, after considering the record in this case, as well as the written and oral arguments of the parties' counsel, we conclude that the findings of fact by the Board's majority are supported by substantial evidence in the record, and that the Board's conclusions of law are correctly based upon the Act and controlling legal principles. Accordingly, the Board's order is ENFORCED.