# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 9, 2011

No. 09-20267

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN PHILLIP HERNANDEZ,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, SMITH, and ELROD, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

John Hernandez appeals his sentence, arguing that it is unreasonable and violates his Sixth Amendment right to a jury trial because it can be found reasonable only on the basis of judge-found facts. We affirm.

No. 09-20267

I.

The parties do not dispute the relevant facts. Hernandez was charged with one count of knowingly making a false material statement to a federal firearms licensee, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2) (2006). At rearraignment, the government presented its case, and Hernandez pleaded guilty based on those facts. The district court sentenced him to ninety-seven months in prison, three years of supervised release, and a $100 special assessment.

II.

The facts presented at rearraignment were that Hernandez purchased two Bushmaster Model 16M4, .223 caliber semiautomatic assault rifles (civilian versions of the U.S. military's M16 assault rifle) from a sporting goods store. He intentionally lied on an ATF form that asked whether he was buying the firearms on behalf of another person or for himself. He said he was buying them for himself, when in fact he was buying them on behalf of a person who intended to smuggle them to Mexico. The statement was material, because the store would not have made the sale had Hernandez said he was buying the firearms on behalf of another person. One of the two firearms was recovered at a crime scene in Acapulco, Mexico, about seven months later.

In addition, over the course of a year, Hernandez paid $24,800 to purchase at least twenty-three firearms that were "military in style and utility." Fifteen of the twenty-three were "essentially" identical to the Bushmaster 16M4. Five were recovered at crime scenes in Mexico. A "cooperating source" told the ATF that Hernandez had recruited him or her to traffic firearms, and Hernandez told the source that the firearms were being sold out of state for profit. Hernandez also promised to pay the source to buy firearms in the source's name on Hernandez's behalf. After his arrest, Hernandez told the ATF that he had sold all of the firearms he bought, but he did not say to whom.

2

No. 09-20267

### III.

The presentence report ("PSR") set forth the following additional facts: Hernandez was one of the most prolific purchasers for an organization involved in illegal firearms trafficking that had at least 22 suspected members and purchased at least 328 firearms. Of the 23 firearms purchased by Hernandez, one was used in the kidnaping and murder of a businessman in Municipia de Xicotepec, Mexico; another when the Los Zetas drug cartel enforcers opened fire on the Mexican Army at the Botanical Garden in Miahuatlan de Porfirio, Mexico; and another was recovered in Acapulco, Mexico, after more than a dozen armed assailants attacked two offices of the state attorney general and executed four police officers and three secretaries.

The PSR also related numerous instances in which Hernandez, using various aliases, either accompanied, recruited, or tried to recruit others as straw purchasers to buy 80 firearms, in addition to the 23 that Hernandez had bought. In addition, one witness said he heard Hernandez talk about the Zetas on the phone. Ultimately, the PSR concluded that Hernandez was responsible, for guidelines purposes, for the purchase or attempted purchase of "a conservative total" of 103 firearms.

The PSR calculated an offense level of 24: (1) starting with an offense level of 12 pursuant to U.S.S.G. § 2K2.1(a)(7); (2) adding eight levels pursuant to § 2K2.1(b)(1)(D) for an offense involving between 100 and 199 firearms;[1] (3) adding four levels for firearms trafficking pursuant to § 2K2.1(b)(5); (4) adding three levels for a manager or supervisor role in the offense, based on Hernandez's recruitment of straw purchasers, pursuant to § 3B1.1(b); and (5) subtracting three levels for acceptance of responsibility, pursuant to § 3E1.1(a)-(b). Hernandez's total offense level of 24 and criminal history category of I resulted in

---

[1] The PSR referred to § 2K2.1(b)(1)(C), not (D), but it applied the proper enhancement.

No. 09-20267

a 51-63-month guideline sentencing range.

The PSR identified the following authorized factors warranting departure from the range: First, U.S.S.G. § 2K2.1, application note 11(B), authorizes an upward departure where the offense involves "military type assault rifles;" second, § 2K2.1, application note 13(C), authorizes an upward departure where the defendant trafficked substantially more than twenty-five firearms; and third, § 5K2.0(a)(2)(B) authorizes an upward departure in exceptional cases for circumstances not identified in the guidelines and not adequately taken into consideration by them. The main circumstances identified by the PSR that were potentially not adequately taken into consideration were (1) that the firearms were used in the commission of eight murders, (2) that the sheer number of purchases indicated Hernandez likely knew they would not serve a law-abiding purpose, and (3) that the future harm of his firearms purchases was "immeasurable."

Hernandez did not object to the PSR. The government responded to it by requesting an above-guideline sentence of ninety-seven months based on the quantity and military style of the weapons and how they were used in Mexico. Hernandez objected to the government's request and requested a sentence within the guideline range. He noted that he already had received enhancements for the number of guns used and for trafficking. In addition, he argued there was a "significant issue" as to whether he had knowledge of how the firearms were used in Mexico. Indeed, an ATF agent testified he "had no evidence [Hernandez] knew of the activity that those firearms would eventually end up a part of in Mexico."

The government countered that Hernandez was overheard talking about the Zetas on the telephone and that it was common knowledge they were "drug henchmen for the Gulf cartel." It also detailed the various murders committed with the weapons Hernandez had purchased or recruited others to buy. Hernandez responded that he never admitted that he knew how the guns would be

4

used. He also noted that a few weeks earlier, Juan Gutierrez, another firearms trafficker, was sentenced to only forty-six months for making false statements in purchasing twenty-three firearms. *See United States v. Gutierrez*, 359 Fed. App'x 540, 541 (5th Cir. 2010). To the extent there were differences between the two cases, Hernandez argued his sentence enhancements under the guidelines accounted for them.

The district court concluded that an upward departure in the offense level from 24 to 30 was warranted, pursuant to U.S.S.G. §§ 2K2.1 and 5K2.0. It did so because (1) military-type assault rifles were purchased, as discussed in § 2K2.1, application note 11(B); (2) substantially more than twenty-five firearms were trafficked, as discussed in § 2K2.1, application note 13(C); and (3) the court believed that the sentencing guidelines range did not adequately account for the severity of Hernandez's actions, because they led to eight murders in Mexico and "strengthened the drug cartels by arming them." The court noted that it was "not holding the defendant directly accountable for the death of others . . . [but] his part in the criminal activity is nonetheless significant in facilitating violent crime." The court also observed that the statutory maximum sentence for Hernandez's offense was 120 months, above Hernandez's sentence. Hernandez objected to the sentence on Sixth Amendment and reasonableness grounds.

IV.

Hernandez argues that his sentence is not reasonable if based only on the facts he admitted, so it violates his Sixth Amendment right to a jury trial, because it is authorized only by judge-found facts. We review constitutional claims *de novo*. *E.g.*, *United States v. Romero-Cruz*, 201 F.3d 374, 377 (5th Cir. 2000). Hernandez relies primarily on two concurrences by Justice Scalia that state that every federal criminal sentence that is higher than what could be upheld as reasonable, based only on the facts found by the jury or admitted by the defendant,

No. 09-20267

is a violation of the Sixth Amendment right to a jury.[2]

Irrespective of whether Supreme Court precedent has foreclosed as-applied Sixth Amendment challenges to sentences within the statutory maximum that are reasonable only if based on judge-found facts,[3] such challenges are foreclosed under our precedent. We have rejected one such Sixth Amendment challenge to a within-guideline range sentence on the ground that a "sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a guidelines sentencing range."[4]

*Setser* cannot be factually distinguished from this case: Because Justice Scalia's reasoning in *Rita* and *Gall* (and hence Hernandez's reasoning here) makes no distinction between within-guidelines and above-guidelines sentences that are reasonable solely based on judge-found facts,[5] if the former are categorically acceptable under our precedent, then the latter must be too. Indeed, to distinguish *Setser* on the ground that within-guidelines sentences are always

---

[2] *Rita v. United States*, 551 U.S. 338, 372 (2007) (Scalia, J., concurring in part and concurring in the judgment); *see Gall v. United States*, 552 U.S. 38, 60 (2007) (Scalia, J., concurring).

[3] *See Gall*, 552 U.S. at 60 (Scalia, J., concurring) ("[A]s I noted in *Rita*, the Court has not foreclosed as-applied constitutional challenges to sentences. The door . . . remains open for a defendant to demonstrate that his sentence, whether inside or outside the advisory Guidelines range, would not have been upheld but for the existence of a fact found by the sentencing judge and not by the jury."); *Rita*, 551 U.S. at 375 (Scalia, J., concurring in part and concurring in the judgment) ("The one comfort to be found in the Court's opinion . . . is that it does not rule out as-applied Sixth Amendment challenges to sentences that would not have been upheld as reasonable on the facts encompassed by the jury verdict or guilty plea.").

[4] *United States v. Setser*, 568 F.3d 482, 498 (5th Cir.) (quoting *United States v. Lewis*, 476 F.3d 369, 389 (5th Cir. 2007)), *cert. denied*, 130 S. Ct. 437 (2009)).

[5] *See Gall*, 552 U.S. at 60 (Scalia, J., concurring) ("The door . . . remains open for a defendant to demonstrate that his sentence, *whether inside or outside the advisory Guidelines range*, would not have been upheld but for the existence of a fact found by the sentencing judge and not by the jury." (emphasis added)); *Rita*, 551 U.S. at 371-72 (Scalia, J., concurring in part and concurring in the judgment) (giving example of sentence within the guideline range that would be unconstitutional as-applied under his reasoning).

6

No. 09-20267

constitutional but above-guidelines sentences may not be would be conclusively to presume that within-guidelines sentences are reasonable even if we ignore the judge-found facts, which would treat the guidelines as more than just purely advisory and would violate Supreme Court precedent.[6]

Moreover, aside from *Setser*, we have rejected Sixth Amendment challenges to sentences––albeit not challenges of the type brought here––numerous times on the ground that the sentencing court is entitled to find by a preponderance of the evidence all facts relevant to the determination of a sentence below the statutory maximum.[7]  So Hernandez's as-applied Sixth Amendment claim must fail.[8]

## V.

Hernandez maintains that his sentence is procedurally and substantively

---

[6] *See Nelson v. United States*, 129 S. Ct. 890, 892 (2009) (per curiam) ("The Guidelines are not only not mandatory on sentencing courts; they are also not to be *presumed* reasonable.").

[7] *E.g. United States v. Whitfield*, 590 F.3d 325, 367 (5th Cir. 2009), *cert. denied*, 131 S. Ct. 124, *and cert. denied*, 131 S. Ct. 134, *and cert. denied*, 131 S. Ct. 136 (2010); *United States v. Molina*, 469 F.3d 408, 416 (5th Cir. 2006); *United States v. Alonzo*, 435 F.3d 551, 553 (5th Cir. 2006); *see United States v. Mares*, 402 F.3d 511, 517, 519 (5th Cir. 2005) (*dictum*) ("After circulating this opinion to all members of the court, this panel has benefitted from and incorporated into the opinion many of their comments. . . . *Booker* contemplates that, with the mandatory use of the Guidelines excised, the Sixth Amendment will not impede a sentencing judge from finding all facts relevant to sentencing.").

[8] At least five other circuits share our position, with no circuit appearing to take the opposite view.  *United States v. Treadwell*, 593 F.3d 990, 1017-18 (9th Cir.) (holding sentences need only be below the statutory maximum), *cert. denied*, 131 S. Ct. 280, *and cert. denied*, 131 S. Ct. 281, *and cert. denied*, 131 S. Ct. 488 (2010); *United States v. Ashqar*, 582 F.3d 819, 825 (7th Cir. 2009) ("While [the as-applied Sixth Amendment] argument is not without its advocates, it is not the law."), *cert. denied*, 130 S. Ct. 1722 (2010); *United States v. White*, 551 F.3d 381, 384 (6th Cir. 2008) (en banc) ("In the post-*Booker* world, the relevant statutory ceiling is no longer the Guidelines range but the maximum penalty authorized by the United States Code."); *United States v. Benkahla*, 530 F.3d 300, 312 (4th Cir. 2008) (rejecting Sixth Amendment as-applied claim as "too creative for the law as it stands"); *United States v. Redcorn*, 528 F.3d 727, 745-46 (10th Cir. 2008) (rejecting as-applied Sixth Amendment challenge).

No. 09-20267

unreasonable.  We review the reasonableness of a sentence for abuse of discretion, whether it is inside or outside the guidelines range.  *Gall*, 552 U.S. at 51. We first examine the sentence for significant procedural error, such as whether it was improperly calculated under the guidelines, based on clearly erroneous facts, or not adequately explained.  *Id.*  If the sentence is procedurally sound, we review it for substantive reasonableness, based on the totality of the circumstances.  *Id.*  We examine for abuse of discretion both the district court's decision to depart upwardly from the guidelines and the extent of its departure.  *United States v. Zuniga-Peralta*, 442 F.3d 345, 347 (5th Cir. 2006).  Appellate review for substantive reasonableness is "highly deferential," because the sentencing court is in a better position to find facts and judge their import under the § 3553(a) factors with respect to a particular defendant.  *United States v. Key*, 599 F.3d 469, 473 (5th Cir. 2010), *cert. denied*, 2011 U.S. LEXIS 816 (U.S. Jan. 18, 2011).

A.

Hernandez contends the district court committed procedural error in weighing some § 3553(a) factors more heavily than others.  But although courts must *consider* all the § 3553(a) factors,[9] it is not possible, let alone required, that they give incommensurable factors, such as "the history and characteristics of the defendant" and "adequate deterrence to criminal conduct," equal weight. Rather, they must use their judgment to weigh the relative importance of each factor in relation to each particular defendant, with some factors being more important in some cases and other factors more important in others.[10]  So the

---

[9] *Gall*, 552 U.S. at 49-50.  The district court need not, however, issue a "robotic incantation[] that each statutory factor has been considered."  *Key*, 599 F.3d at 474 (quoting *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006)).

[10] *See United States v. Campos-Maldonado*, 531 F.3d 337, 339 (5th Cir. 2008) (per curiam) ("[The district court's] individualized assessment 'necessarily means that [it] is free to con-
(continued...)

district court did not commit procedural error in weighing some factors (such as the military nature of the firearms, the number trafficked, and Hernandez's role in arming the drug cartels) more heavily than others (such as the applicable guidelines range, Hernandez's limited criminal history, and the disparity between his sentence and the sentence another judge gave another gun trafficker).

Hernandez next claims the district court committed significant procedural error by not adequately explaining why it chose to depart from the guidelines to the extent that it did or explaining how much of that departure was attributable to each factor it relied on. With respect to the adequacy of a court's explanation for the extent of its departure, we have previously upheld as reasonable an explanation for an upward departure that was of similar length and specificity as the sentencing determination here.[11] Moreover, it would be unhelpful to remand just for the court to explain why it picked 97 months instead of 96 or 95. The extent of a departure is a matter of informed judgment, not mathematical precision.[12] Therefore, we reject Hernandez's urging that the district court must explain in more detail why it chose the precise sentence.

The cases Hernandez cites from other circuits are either no longer good law or not to the contrary. He refers to *United States v. Jackson*, 921 F.2d 985, 989 (10th Cir. 1990), for the proposition that the district court "*must* indicate its reasoned basis for the degree of departure" (citation omitted). The court's explanation here was sufficient to do so. In *United States v. Ferra*, 900 F.2d 1057,

---

[10] (...continued)
clude that the applicable [g]uidelines range gives too much or too little weight to one or more factors, either as applied in a particular case or as a matter of policy.'" (quoting *United States v. Williams*, 517 F.3d 801, 809 (5th Cir. 2008))).

[11] *See United States v. Smith*, 417 F.3d 483, 491 (5th Cir. 2005) (finding district court's explanation of its sentence "adequate").

[12] *See Gall*, 552 U.S. at 49 (implying there is no "ascertainable method of assigning percentages to various justifications" for departing from the guidelines).

1061-64 (7th Cir. 1990), the court held that the district court must "link the extent of [a] departure to the structure of the guidelines" to encourage uniformity, *id.* at 1062, which would indeed be asking more than the district court did here, but that is no longer good law after *Booker* made the sentencing guidelines advisory. *United States v. Kirkpatrick*, 589 F.3d 414, 415-16 (7th Cir. 2009).

Finally, Hernandez cites *United States v. Wallace*, 461 F.3d 15, 42 (1st Cir. 2006), in which the court upwardly departed by four to six points where the guidelines contemplated only a two-point increase for the exact conduct at issue (robbery after the defendant was indicted), and the sentencing court never noted the discrepancy. The First Circuit held that the district court's failure to note the guidelines recommendation was procedurally unreasonable, because it made it impossible for the court of appeals to evaluate why the district court believed the guidelines recommendation was inadequate. *Id.* at 42-43.

That is not the case here, because there is no guideline provision that the district court failed to address that covers any of the factors the court relied on to vary from the guideline range. The court's first two reasons for departing were based on application notes that expressly stated that an upward departure from the guidelines may be warranted, and its third reason––that Hernandez's firearms trafficking was more serious than the mine-run gun trafficking case because it facilitated the Mexican drug cartels––is nowhere discussed in the guidelines.[13] The court therefore adequately explained why it chose to deviate

---

[13] Hernandez contended for the first time at oral argument (and afterwards in a letter filed under 5TH CIR. R. 28(j)) that the district court's determination was tantamount to finding him responsible for (1) the "reasonably foreseeable acts" of co-conspirators under U.S.S.G. § 1B1.3; (2) having "transferred any firearm . . . with . . . reason to believe that it would be used or possessed in connection with another felony offense" under U.S.S.G. § 2K2.1(b)(6); and (3) having committed first degree murder under § 2A1.1, without addressing any of those guideline provisions. Because it was not properly briefed on appeal, that argument is waived. *NLRB v. Seaport Printing & Ad Specialties, Inc.*, 589 F.3d 812, 816 n.7 (5th Cir. 2009); *see also United States v. Thames*, 214 F.3d 608, 611 n.3 (5th Cir. 2000) (holding that inadequately
(continued...)

No. 09-20267

from the guideline range to the extent that it did.

Relatedly, Hernandez also avers that the district court should have explained how much of the departure was attributable to each factor it mentioned. He cites *United States v. Bell*, 371 F.3d 239, 244-46 (5th Cir. 2004), as to which he alleges that we vacated a sentence because of the district court's "apparent conflation of several different grounds for departure." But Hernandez's selective quotation is taken out of context. The issue in *Bell* was that the district court appeared, based on its sentencing colloquy, to rely on reasons for its departure from the guideline range beyond those it provided in its written explanation.[14] Thus, the grounds for departure that were being "conflated" were the court's stated grounds for departure in its written explanation and certain possibly unstated grounds.[15] But Hernandez does not allege that the district court here relied on unstated reasons; he maintains only that the court relied on multiple reasons without breaking down precisely how important it considered each to be. Thus, the problem in *Bell*—that the appeals court was uncertain of the grounds for departing from the guidelines range, thereby preventing meaningful review— is not present here.

Hernandez's claim––that a court must break down how much of its departure is attributable to each of its stated reasons––asks for more specificity than is required.[16] If a judge imposes a sentence outside the guideline range, he must

---

[13] (...continued)
briefing an issue constitutes waiver).

[14] *See Bell*, 371 F.3d at 244 ("Our concerns on this point center on the district court's apparent grounding of its decision to depart in factors that it did not discuss in its written statement of reasons.").

[15] *See id.* at 244-45 (noting that during the sentencing colloquy, the district court voiced concerns on which it appeared to rely, but which it never addressed in its written statement).

[16] *See, e.g., Gall*, 552 U.S. at 43-44, 53 (holding district court "committed no significant (continued...)

explain why but need only "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita*, 551 U.S. at 356-57. The district court here considered the § 3553(a) factors and the parties' arguments, pointed to specific application notes in the guidelines stating possible bases for an upward departure, and provided additional reasons why the guidelines did not adequately take into account the seriousness of Hernandez's gun trafficking. Its explanation was procedurally adequate.

## B.

Hernandez claims his sentence is substantively unreasonable because it is "difficult to understand why a ninety-seven-month sentence is 'not greater than necessary.'" That is hyperbole. Application note 11(B) to U.S.S.G. § 2K2.1 says an upward departure may be warranted if the crime involves "military type assault rifles." Hernandez's purchases did, and that makes his crime more serious than the run-of-the-mill case of firearms trafficking, because military-type assault rifles are more likely to be used by criminal, military, or terrorist organizations that pose a threat to U.S. security.

Secondly, application note 13(C) to § 2K2.1 says an upward departure may be warranted if the defendant trafficked substantially more than 25 firearms. Although Hernandez argues that the guidelines already provide for an eight-level enhancement for firearms offenses involving 100 to 199 firearms, § 2K2.1-(b)(1)(D), and an additional four-level enhancement for firearms trafficking,

---

[16] (...continued) procedural error" despite departing downward from the guideline range for multiple reasons without explaining the weight it was attributing to each reason); *United States v. Rajwani*, 476 F.3d 243, 251 (5th Cir. 2007) (holding that the departure from the guidelines was procedurally reasonable where based on (1) the vulnerability of elderly victims to fraud and (2) the likelihood that the victims' modest means and advanced age produced "greater psychological trauma," without suggesting that an explanation of the weight of each factor was required).

§ 2K2.1(b)(5), it does not logically follow that the guidelines adequately account for the trafficking of 100 to 199 firearms. The enhancement for an offense involving 100 to 199 firearms applies to all illegal transactions involving 100 to 199 firearms, not only to trafficking, and therefore it does not reflect the seriousness of gun-trafficking offenses. The trafficking enhancement is meant to do that, but it remains constant regardless of the number of firearms trafficked, so it becomes relatively more trivial as the number of firearms trafficked increases. As a result, it may fail to account sufficiently for the seriousness of trafficking where it involves a large number of firearms.

An example will illustrate. Illegal possession of 25 firearms would result in a six-level enhancement under § 2K2.1(b)(1), and illegal possession of 100 firearms would result in an eight-level enhancement. That is a two-point jump for possessing 75 more firearms. Similarly, illegal trafficking of 25 firearms would result in a ten-level enhancement under § 2K2.1(b)(1) and (5), but illegal trafficking of 100 firearms would result in a twelve-level enhancement. That is again just a two-point jump, even though trafficking in 75 more firearms surely poses a greater marginal threat to society than does merely possessing 25 more.

Application note 13(C) represents the Sentencing Commission's recognition that it may be appropriate to tie the § 2K2.1(b)(5) trafficking enhancement to the number of firearms trafficked where that number becomes large, because otherwise it would not adequately reflect the seriousness of the crime. That is a perfectly good reason to depart from the guidelines, and the district court was entitled to rely on application note 13(C) to do so.

Finally, the court pointed out that it was appropriate to depart from the guidelines under § 5K2.0 because Hernandez's gun trafficking was directly arming the Mexican drug cartels. Hernandez knew he was sending M16's and other firearms to Mexico; he was heard on the phone talking about the Los Zetas drug cartel enforcers; and his firearms were used by the cartels about two months

No. 09-20267

later. Even assuming *arguendo* that the specific criminal activity for which the guns would ultimately be used was not reasonably foreseeable to Hernandez, the evidence is sufficient to show that he could reasonably foresee he was arming the Mexican drug cartels. Therefore, he was culpable not only for creating the general risk, inherent in all firearms trafficking, that the weapons he trafficked might be misused by the purchasers, but also for facilitating organizations that pose a significant threat to U.S. and Mexican national security. That takes his sentence out of the heartland of gun-trafficking cases. It was eminently reasonable for the district court to enhance his sentence on that basis.

It is true, as Hernandez argues, that his sentence is notably larger than that of another recently convicted gun trafficker.[17] But Hernandez also trafficked in many more firearms and recruited more straw purchasers. Indeed, Gutierrez would not have qualified for the departure recommendation in application note 13(C) to § 2K2.1, because he did not traffic in significantly more than twenty-five firearms. In any case, an argument premised primarily on sentencing disparity is insufficient to render a sentence substantively unreasonable.[18]

In sum, Hernandez was sentenced to 97 months, below the statutory maximum of 120 months, 18 U.S.C. § 924(a)(2), for supplying the Mexican drug cartels with a conservative total of 103 firearms, including 23 military-style assault rifles he admitted to purchasing, some of which were recovered at drug cartel-related murder sites in Mexico. That sentence is far from an abuse of discretion.

AFFIRMED.

---

[17] *See Gutierrez*, 359 F. App'x at 541 (affirming forty-six-month sentence for trafficking in twenty-eight military-style firearms later found in Mexico).

[18] *Key*, 599 F.3d at 475-76 ("An argument premised solely or primarily on disparity necessarily negates [*Gall*'s] command [to make an individualized assessment]" (citing *Gall*, 552 U.S. at 50)).